[No. D040112. Fourth Dist., Div. One. Jan. 26, 2004.]

KOREA WATER RESOURCES CORPORATION, Plaintiff and Appellant, v. CHONG SUNG LEE, Defendant and Respondent.

392

---

**Counsel**

Burke, Williams & Sorensen, Howard B. Kim; Burnham Brown and John J. Verber for Plaintiff and Appellant.

Law Offices of Daniel R. Salas and Daniel R. Salas for Defendant and Respondent.

OPINION

**HALLER, J.**—Korea Water Resources Corporation (Korea Water) appeals from a summary judgment in favor of Chong Sung Lee. Korea Water obtained a provisionally enforceable money judgment against Lee from a trial court in Korea, and then brought an action in California for recognition of the Korean judgment and to obtain an attachment on Lee's assets in San Diego County. The California superior court initially ordered issuance of the attachment and stayed the California recognition action pending the outcome of appellate proceedings in Korea. After the Korea Supreme Court rejected the tort theory of liability underlying the Korean judgment and remanded the case to a lower appellate court for further proceedings, the California superior court granted Lee's motion for summary judgment and discharged the attachment.

Code of Civil Procedure section 1713 et seq.[1] sets forth conditions for California's recognition and enforcement of foreign money judgments. Section 1713.2 states: "This chapter applies to any foreign judgment that is final and conclusive and enforceable where rendered *even though an appeal therefrom is pending or it is subject to appeal.*" (Italics added.) The issue presented in this appeal is the meaning of section 1713.2's requirement that a foreign judgment must be "final and conclusive and enforceable" in the foreign country to support a claim for recognition of the judgment in California.

Preliminarily, given that section 1713.2 allows recognition actions notwithstanding pending appeals, we reject Lee's argument that the meaning of the phrase "final and conclusive and enforceable" should be determined by a provision in the Korea Code of Civil Procedure defining "final and conclusive" as meaning the appellate process is terminated. Nevertheless, we hold that because the Korea Supreme Court's ruling removed the legal underpinning that supported the judgment and the judgment is no longer based on a calculated damages amount, the judgment is not "conclusive" in Korea within the meaning of section 1713.2. Accordingly, summary judgment in Lee's favor was proper.

## BACKGROUND

### A. *California Summary Judgment in Lee's Favor*

Korea's court system includes a district court that conducts the initial trial, an appellate court (called a "high court") that provides appellate review and

---

[1] Subsequent California statutory references are to the California Code of Civil Procedure unless otherwise indicated.

conducts trials de novo including the taking of evidence, and a Supreme Court that reviews questions of law. (Korea Code Civ. Proc., articles 360, 378, 392, 402.)[2]

Korea Water filed a complaint against Lee in Korea based on Lee's conduct of burying industrial wastes in land subsequently sold to Korea Water without notifying Korea Water of the defect. Korea Water's complaint alleged liability premised on four theories: (1) warranty due to defects; (2) breach of contract due to the delivery of defective property or failure to notify of defects; (3) tort based on the deceitful conduct of hiding and failing to notify the buyer of the defects; and (4) tort based on the duty to indemnify for the costs caused by the illegal act of dumping wastes.

In April 1998, Korea Water obtained a judgment from a Korea district court against Lee. The Korea district court ordered Lee to pay Korea Water 16.7 billion Korean won (the equivalent of approximately $11.4 million U.S. dollars) for the cost of disposing of the wastes. The Korea district court's judgment provided that the judgment may be "provisionally executed."[3]

On May 13, 1998, Lee appealed the Korea district court judgment to the high court. On February 2, 1999, after conducting a trial de novo, the high court entered a judgment affirming the district court's judgment.

Both the district and high court judgments were premised on the fourth theory of liability (i.e., tort based on the duty to indemnify for an illegal act).[4] The district and high courts did not rule on the other three theories of liability raised by Korea Water.

---

[2] Subsequent reference to "articles" or to the "Korea code" are to the Korea Code of Civil Procedure. After giving the parties notice and an opportunity to respond, we have taken judicial notice of the Korea Code of Civil Procedure, as translated in Statutes of the Republic of Korea, volume 3 (Korea Legislation Research Institute, 1997). We have been advised that the Korea code was revised in 2002, resulting in a change in article numbers and reorganization of various parts, but with no substantive changes.

[3] Article 199 (1) provides for inclusion of a provisional execution order in a judgment, stating: "In a judgment on a claim for property rights, the court shall pronounce that a provisional execution may be carried out by its own authority with or without security, regardless of a request of parties unless there is a justifiable reason: Provided, That in a judgment on a monetary claim for a bill or check, the court shall pronounce that the provisional execution may be carried out without any security."

[4] Portions of the translated language of the high court and district court opinions are difficult to understand. As we shall set forth below, the Korea Supreme Court interpreted the high court decision as premised on the "illegal dumping on the land [that] constitutes a tort," and Lee's expert interpreted both the district court and high court decisions as premised solely on this tort theory of liability. Our reading of the opinions comports with this assessment. Although Korea Water disputed this interpretation before the California superior court, it does not cite to any expert opinion or present any grounds to support a contrary interpretation.

On February 3, 1999, after unsuccessful efforts to fully enforce the judgment in Korea, Korea Water filed a recognition action in California, seeking a California judgment for the money owed under the Korean judgment. Thereafter, Korea Water successfully applied to the California superior court for a writ of attachment to secure its claim for money. On May 20, 1999, the California superior court ordered issuance of the requested writ of attachment on Lee's residence and bank accounts in San Diego County.

In the meantime, Lee had appealed the high court's judgment to the Korea Supreme Court. On December 13, 1999, Lee moved for summary judgment in the California recognition action, arguing that because the judgment was currently on appeal before the Korea Supreme Court, it was not final and conclusive and enforceable in Korea so as to allow for recognition in California. The superior court denied Lee's summary judgment motion because of Lee's failure to provide sufficient information for the court to determine the applicable Korean law. The court noted that the parties disputed what constituted a final and conclusive and enforceable judgment in Korea, and stated it would ascertain the meaning of Korean law at trial after hearing expert testimony. In April 2000, the California court stayed the recognition proceeding (but not the writ of attachment) for purposes of awaiting the Korea Supreme Court's ruling.

In January 2002, Lee advised the California court that the Korea Supreme Court had rejected the tort basis of liability relied upon in the high court and district court judgments. Accordingly, the Korea Supreme Court had "canceled" the high court's judgment and remanded the case to the high court for retrial. Based on the Korea Supreme Court's ruling, Lee again moved for summary judgment.

In May 2002, the superior court granted Lee's summary judgment motion, reasoning that because the Korea Supreme Court had rejected the legal theory of liability on which the judgment was based, it was no longer clear there was a viable legal theory under Korean law that could support the judgment. Accordingly, the superior court concluded the Korean judgment was not final and conclusive and enforceable for purposes of allowing recognition in California. After the grant of summary judgment in Lee's favor, the superior court ordered discharge of the attachment and release of the levied property.

### B.  *The Korea Supreme Court's Decision and High Court's Reduction of the Amount of the Provisional Execution Order*

The Korea Supreme Court reviewed both the high court's factual findings and its legal conclusion that Lee's illegal dumping on the land constituted a

tort requiring Lee to compensate Korea Water for the damage incurred in removing the wastes. The Korea Supreme Court ruled that, contrary to Lee's arguments, the high court's factual findings were reasonable—i.e., that Lee surreptitiously and illegally dumped industrial wastes into a huge pit and covered them with sand for concealment. However, the Korea Supreme Court rejected the high court's ruling that Lee "as a wrongdoer, who illegally dumped the wastes onto the Land at Issue, is liable for damage incurred to [Korea Water] in removing the wastes."

The Korea Supreme Court stated that "setting aside [Korea Water's] assertion that dumping of the wastes onto the [land] constitutes a defect, [Lee's] act of dumping the wastes into the [land] which was his own property at that time does not constitute a tort because it was an act toward [Lee] himself, not toward any other third party." The Korea Supreme Court reasoned that "the fact that [Lee] dumped the wastes onto the [land] in which he then had ownership does not constitute an illegal act against [Korea Water] who gained ownership of the [land] afterwards."

The Korea Supreme Court concluded that the high court misunderstood the applicable tort principles, and accordingly decided to "cancel the judgment of the Appellate Court and to remand this case to the Appellate Court for retrial." Although the Korea Supreme Court noted that Korea Water had alleged other theories of liability, it rendered no opinion regarding these claims.

Following remand, the high court issued an order providing that "the execution pursuant to the provisional execution order . . . shall be suspended to the amount exceeding 5 billion Korean Won without the requirement of a bond deposit until the judgment by this Court . . . ."

## C.  *Experts' Opinions*

Both parties submitted expert declarations regarding their interpretation of Korean law and the import of the Korea Supreme Court's ruling. To support a conclusion that the judgment was final and conclusive and enforceable, Korea Water's experts emphasized that the Korea Supreme Court had not rejected the high court's factual findings, the judgment was still provisionally enforceable, and the judgment could be sustained on other legal theories. In contrast, Lee's experts opined the judgment was not final and conclusive and enforceable, focusing on the Korea Supreme Court's rejection of the tort theory of liability underlying the judgment, the reduction in the amount of the provisional execution order, and the uncertainty that a factual or legal basis for liability would be found by the high court.

More specifically, an expert for Korea Water stressed that the Korea Supreme Court's decision did not find any error in the lower courts' factual findings, and opined that the decision did not "in any way find that [Lee] is not responsible to [Korea Water] . . . for his apparent illegal activities; it simply corrects the mistake of the . . . High Court in relying on a wrong legal theory to reach the result, and orders [the high court] to consider other legal theories" at retrial. Korea Water's experts also stated that the remand order did not affect Korea Water's right to execute on Lee's assets up to 5 billion Korean won, and thus Korea Water's judgment was still enforceable. According to Korea Water's experts, enforceability was the most important test for determining whether a judgment was final and conclusive in Korea. Thus, the experts opined that because the judgment was still enforceable, Korea Water's judgment was also final and conclusive.

To support a contrary position, Lee's experts underscored the fact that the district court and high court judgments were based solely on the rejected tort theory of liability. An expert opined that "even though the judgment of the District Court will remain technically intact during the pendency of the appellate retrial in the High Court," the district court's judgment could not be adopted by the high court because the tort basis of the district court judgment had been rejected by the Korea Supreme Court. Further, the expert explained that at retrial before the high court, the parties would be entitled to present additional or new facts and legal theories, and the high court was not precluded from rejecting the earlier factual finding against Lee.

## DISCUSSION

We review the granting of a summary judgment motion de novo to determine if the moving party is entitled to judgment as a matter of law. (*Zavala v. Arce* (1997) 58 Cal.App.4th 915, 925 [68 Cal.Rptr.2d 571].)

### A. *California's Foreign Money-Judgment Recognition Act*

■ California's adoption of the Uniform Foreign Money-Judgments Recognition Act (§ 1713) allows California courts to recognize and enforce foreign money judgments. The chapter "applies to any foreign judgment that is final and conclusive and enforceable where rendered even though an appeal therefrom is pending or it is subject to appeal." (§ 1713.2.) Section 1713.3 provides that, with certain statutorily defined exceptions,[5] "a foreign judgment meeting the requirements of Section 1713.2 is conclusive between the parties to the extent that it grants or denies recovery of a sum of money. The

---

[5] These exceptions pertain to such issues as due process, personal jurisdiction, and notice in the foreign jurisdiction.

foreign judgment is enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit, except that it may not be enforced pursuant to the provisions of Chapter 1 (commencing with Section 1710.10) of this title."

Section 1710.10, which is *not* applicable to foreign judgments, provides for the entry of a California judgment based on a sister state judgment. The Law Revision Commission Comment to section 1713.3 explains that a holder of a foreign judgment may not apply for immediate entry of the judgment in California, but instead must bring an action in California to obtain a domestic judgment.

■ Although section 1713.2 allows a foreign judgment holder to bring an action for California recognition notwithstanding a pending foreign appeal of the judgment, section 1713.6 gives the California court the power to stay the recognition action pending the outcome of the foreign appeal.[6]

■ In section 1713.2, California has defined what type of foreign judgments it will recognize. That is, California has determined it will recognize foreign judgments that are final, conclusive, and enforceable, notwithstanding the fact they may still be subject to appellate review. The appellate caveat to section 1713.2 makes it clear that the fact that a foreign judgment is still vulnerable to change on appeal in the foreign country is not *alone* enough to preclude recognition of a foreign judgment which is otherwise final, conclusive, and enforceable in the foreign country. Additionally, section 1713.2's reference to a final, conclusive and enforceable judgment "where rendered" makes it clear it is the status of the foreign judgment *in the foreign country* that determines whether the judgment is ripe for recognition in California.

There is no serious dispute that the Korea district court judgment at issue here is still enforceable to the extent of the reduced provisional execution order.[7] Even one of Lee's experts acknowledged that the district court judgment "remain[s] technically intact" notwithstanding the Korea Supreme Court's remand of the case to the high court. The fact that after the Korea Supreme Court ruling the high court retained Korea Water's execution rights up to 5 billion Korean won indicates the judgment to that extent is still enforceable. Additionally, it is clear the judgment is "final" in the sense that it

---

[6] Section 1713.6 states: "If the defendant satisfies the court either that an appeal is pending or that he is entitled and intends to appeal from the foreign judgment, the court may stay the proceedings until the appeal has been determined or until the expiration of a period of time sufficient to enable the defendant to prosecute the appeal."

[7] Article 469 provides for execution based on a provisional execution order, stating: "Compulsory execution shall be effected by a final judgment which has become final and conclusive or which is accompanied by the declaration of the provisional execution."

is not interlocutory but will be changed only via the appellate process.[8] Thus, the controversy essentially turns on whether the judgment is "conclusive" in Korea within the meaning of California section 1713.2's "final and conclusive and enforceable" provision.

Before we consider the meaning of the term "conclusive," we evaluate Lee's argument that the scope of section 1713.2 should be ascertained by reference to a section of the Korea Code of Civil Procedure providing that a judgment is not "final and conclusive" until the appellate process is terminated. As we shall explain, we find this argument unavailing because it would abrogate the provision in section 1713.2 which allows recognition of foreign judgments while a foreign appeal is pending.

### B. *Korea Code of Civil Procedure*

Lee's argument is premised on article 471 (1), which states: "A judgment shall not become final and conclusive during the period in which an appeal may be filed or when a lawful appeal has been filed within the prescribed period." Lee argues that because under article 471 (1) a judgment is not "final and conclusive" while the appellate process is still ongoing, this definition should simply be extrapolated onto section 1713.2's reference to a "final and conclusive" judgment. We are not persuaded.

Article 469 provides for compulsory execution in two situations, stating: "Compulsory execution shall be effected by a final judgment [1] which has become final and conclusive or [2] which is accompanied by the declaration of the provisional execution." Article 471 defines "final and conclusive" as meaning appellate review is completed or no longer available. Thus, article 471's definition of "final and conclusive" merely sets forth a definition for one of the two types of enforceable judgments referred to in article 469. Significantly, the Korea code does not limit enforceability only to "final and conclusive" judgments for which the appellate process is over, but also allows enforcement of judgments that are still subject to appeal if they contain a provisional execution order.

■ If we were to apply article 471's definition of "final and conclusive" to section 1713.2, we would in effect be eviscerating the appellate caveat provision of section 1713.2. In exercising its prerogative to decide what types

---

[8] Article 183 provides: "When a trial has been completed, the court shall render a final judgment." Article 186 provides for interlocutory judgments to resolve intermediate issues, stating: "When a trial on an independent means of averment or defense or on any other intermediate issue is required, the court may render an interlocutory judgment . . . ." Article 360 provides that "[a]n appeal may be filed against a final judgment rendered by a District Court in the first instance . . . ."

of foreign judgments it will recognize, California has chosen not to preclude recognition merely because the judgment is subject to appellate review. Because of section 1713.2's appellate caveat, the fact that the Korea code for certain purposes[9] defines the phrase "final and conclusive" as meaning the appellate process is terminated, cannot be determinative on the issue of how to interpret the phrase in section 1713.2.

The existence of section 1713.2's appellate caveat distinguishes the instant case from *Mayekawa Manufacturing Co., Ltd. v. Sasaki* (1995) 76 Wn.App. 791 [888 P.2d 183], a Washington case cited by Lee in support of his argument. In *Mayekawa*, the Washington code provided for recognition of foreign judgments that are " 'final and conclusive and enforceable where rendered.' " (*Id.*, 888 P.2d at p. 187.) There is no mention of an appellate caveat in the Washington code quoted in *Mayekawa*. The *Mayekawa* court held that because the Japanese Civil Code stated that a judgment shall not become final and conclusive if an appeal or objection is filed, a Japanese " 'preliminarily enforceable' " judgment for which an objection had been filed could not be recognized by the Washington court even though it was enforceable. (*Ibid.*)[10]

Among the states that have adopted the Uniform Foreign Money-Judgments Recognition Act, some have included the appellate caveat and others have not. (See 13 West's U. Laws Ann. (master ed. 2002), Uniform Foreign Money-Judgments Recognition Act, § 2, Action in Adopting Jurisdictions, Variations from Official Text, p. 46.) As we stated earlier, because California has chosen to include the appellate caveat, the fact that an enforceable Korean judgment is still under appellate review does not *alone* preclude California recognition, regardless of how the Korea code for various purposes defines the phrase "final and conclusive."

### C.   *California's Legislative Intent and the Impact of the Korea Supreme Court Ruling*

Having rejected a mechanical use of the Korea code's definition of "final and conclusive," the question still remains whether, given the current status of the provisionally enforceable judgment, it is sufficiently conclusive in Korea to warrant California recognition. The pivotal issues before us are (1)

---

[9] In addition to the utilization of the phrase "final and conclusive" to delineate one of two definitions for an enforceable judgment, the Korea code also uses it to determine res judicata effect and to determine which foreign judgments may be enforced. (Articles 202 (1), 203, 477.)

[10] *Mayekawa* is also distinguishable on it facts. In *Mayekawa*, the Japanese preliminarily enforceable judgment was derived from a special procedure allowing a judgment without a full trial, and the plaintiff's claim was thereafter to be subjected to a complete trial based on the defendant's filing of an objection. (*Mayekawa Manufacturing Co., Ltd. v. Sasaki, supra*, 888 P.2d at p. 185.)

what level of "conclusiveness" in the foreign country did the California Legislature intend to require to satisfy the section 1713.2 requirements, and (2) did the Korea Supreme Court's removal of the tort basis of liability relied on in the judgment, and the high court's reduction in the amount of the provisional enforcement order, undermine the judgment to such an extent that it cannot be characterized as falling within the types of judgments intended by the California Legislature to be recognized under section 1713.2.

Korea Water argues that the judgment satisfies the requirements of section 1713.2 because the Korea Supreme Court accepted the lower courts' factual findings and the judgment remains enforceable. For reasons we shall explain, we do not find these factors adequate. Instead, we agree with the California superior court's conclusion that once the Korea Supreme Court rejected the tort theory that formed the legal basis for the judgment and remanded the matter for a new trial, the judgment was not sufficiently conclusive to warrant California recognition.

■ When interpreting statutes, we seek to ascertain the legislative intent with a view to effectuating the purpose of the statute, and construe the words of the statute in the context of the statutory framework as a whole. (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387–388 [20 Cal.Rptr.2d 523, 853 P.2d 978].) The California Legislature's decision to allow ·maintenance of a foreign judgment recognition action even while a foreign appeal is pending, coupled with the power of the superior court to stay the action until resolution of the appeal (§§ 1713.2, 1713.6), suggest that an essential purpose of the appellate caveat is to afford access to provisional creditors' remedies. That is, because under the statutory scheme the superior court may stay, but not dismiss, a recognition action during an appellate challenge to a "final and conclusive and enforceable" judgment, the Legislature has left open the use of provisional creditors' remedies to prevent dissipation of assets during the foreign appellate process. A provisional creditor's remedy such as a writ of attachment is designed to "to aid [an unsecured creditor] in the collection of a *money demand* by seizure of property *in advance of trial and judgment*." (6 Witkin, Cal. Procedure (4th ed. 1997) Provisional Remedies, § 45, pp. 55–56, original italics.)[11] If the Legislature did not want a foreign money judgment holder to be able to use provisional remedies pending resolution of the foreign appeal, it could have simply excluded the appellate caveat, as have other jurisdictions. Thus, the appellate caveat in section 1713.2 appears to be in large part designed to provide the foreign judgment holder with provisional

---

[11] To obtain an attachment, the plaintiff's claim must be based on an unsecured contract claim for money of a fixed or readily ascertainable amount of not less than $500. (§ 483.010; *Hobbs v. Weiss* (1999) 73 Cal.App.4th 76, 80, fn. 1 [86 Cal.Rptr.2d 146].) A claim for money based on a judgment is viewed as contractual in nature. (*Grotheer v. Meyer Rosenberg, Inc.* (1936) 11 Cal.App.2d 268, 272–273 [53 P.2d 996]; 6 Witkin, Cal. Procedure, *supra*, Provisional Remedies, § 62, at p. 70.)

creditors' remedies even though the judgment may potentially be changed on appeal.

■ Here, however, the posture of this case presents much more than a mere *potential* for change on appeal; rather, the continued viability of the judgment has already been compromised as a result of the appellate process. The Korea Supreme Court rejected the tort theory of recovery utilized by the high court and remanded the case to the high court for retrial. According to Lee's expert and essentially unrefuted by Korea Water, both the district court and the high court judgments relied on the theory of tort liability rejected by the Korea Supreme Court. (See fn. 4, *ante*.) Although the Korea Supreme Court rejected Lee's challenge to the lower courts' factual finding that Lee illegally buried industrial wastes, there is no way of knowing whether this conduct will sustain an award of damages under a theory of liability apart from the theory rejected by the Korea Supreme Court. In addition to the loss of certainty as to whether there is a legal foundation for the judgment, the factual foundation is also subject to change given the structure of the Korean system which provides for trial de novo at the appellate level. Under these circumstances, we cannot conclude that the judgment is conclusive in Korea so as to warrant California recognition.

We are not persuaded that the Korean judgment is conclusive merely because it remains to some extent provisionally enforceable. The Korea high court has significantly reduced the amount of the provisional execution order. This reduction indicates the amount of the judgment is in flux and is not based on a calculated damages award. As stated in the Restatement Second of Conflict of Laws, section 108: "A judgment for the payment of money will not be enforced in other states unless the amount to be paid has been finally determined under the local law of the state of rendition."[12]

■ In short, because of the Korea Supreme Court's ruling, the judgment is uncertain not only as to amount but also as to whether it is supported by a viable legal theory. When possible, we seek to give significance to every word used by the Legislature in a statute. (*DuBois v. Workers' Comp. Appeals Bd., supra*, 5 Cal.4th at p. 388.) ■ The Legislature's use of the conjunctive phrase "final and conclusive and enforceable," contemplates the possibility that some judgments, although final and enforceable, may not be

---

[12] The Restatement Second, Conflict of Laws recognizes the principle that if an appeal does not vacate a judgment, the judgment is enforceable in another jurisdiction during the appellate process. (Rest.2d Conflict of Laws, § 107, com. e, p. 321.) However, section 108 of the Restatement, referring to a judgment that is not fixed as to amount, sets forth a specific example of a situation where a judgment will not be considered final for purposes of recognition abroad. (See Rest.2d Conflict of Laws, § 108, com. d.)

sufficiently conclusive to warrant California recognition or access to provisional creditors' remedies. The judgment here, which as the result of appellate review has lost its legal underpinning and is no longer based on a calculated damages award, falls into this latter category. The superior court correctly concluded the judgment was not "final and conclusive and enforceable" in Korea and properly granted Lee's motion for summary judgment.

Korea Water argues that rather than granting summary judgment in Lee's favor, the superior court should have simply exercised its authority under section 1713.6 and continued the stay of the California action pending resolution of the appellate process in Korea. This would be appropriate only if the circumstances of this case satisfied section 1713.2's threshold requirement that the foreign judgment be "final and conclusive and enforceable" in Korea. As we stated, the Korea Supreme Court's decision, which rejected the theory of liability underlying the judgment, defeats such a finding. Because at this juncture the recognition action cannot be maintained under section 1713.2, the superior court had no authority to keep the action intact even with a stay.

## DISPOSITION

The judgment is affirmed. Appellant to bear respondent's costs on appeal.

McConnell, P. J., and McDonald J., concurred.