[No. G034330. Fourth Dist., Div. Three. June 8, 2005.]

SCOTT P. HOLCOMB, Plaintiff and Appellant, v.
U.S. BANK NATIONAL ASSOCIATION et al., Defendants and
Respondents.

## COUNSEL

Scott P. Holcomb, in pro. per., for Plaintiff and Appellant.

Ivanjack, Shuck & Milstead, Gary Tokumori and Holly A. Hayes for Defendants and Respondents.

## OPINION

**ARONSON, J.**—Plaintiff Scott P. Holcomb challenges orders of the trial court declaring him to be a vexatious litigant, requiring him to post a $10,000 bond, and dismissing his complaint when he failed to post the bond. In a separate motion to dismiss, defendants U.S. Bank National Association, John Kearney, and Mary Stone contend Holcomb was required to obtain leave of the presiding justice and post security before filing this appeal.

We deny defendants' motion to dismiss because the trial court's order was not a prefiling order under Code of Civil Procedure section 391.7 (all statutory references are to this code, unless otherwise noted), and leave to file the appeal was unnecessary. We also conclude Holcomb did not fit within any of the definitions of a vexatious litigant under section 391, and therefore reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

Holcomb sued a bank and certain individual defendants over damages allegedly suffered when the bank placed a hold on a check Holcomb deposited into his account. Defendants filed a motion to have Holcomb declared a vexatious litigant, and to require him to post security. The trial court granted the motion and required Holcomb to post a $10,000 bond before resuming prosecution of his case.

Holcomb appealed the order, which we dismissed because it was not separately appealable. After we issued the remittitur, the trial court set an order to show cause re dismissal (OSC), indicating that if the required bond were not posted within a specified time, the case would be dismissed. Holcomb did not appear at the hearing on the OSC, and the court ordered the action dismissed. Holcomb now appeals both orders.

### STANDARD OF REVIEW

 "A court exercises its discretion in determining whether a person is a vexatious litigant. [Citation.] We uphold the court's ruling if it is supported

by substantial evidence. [Citations.] On appeal, we presume the order declaring a litigant vexatious is correct and imply findings necessary to support the judgment." (*Bravo v. Ismaj* (2002) 99 Cal.App.4th 211, 219 [120 Cal.Rptr.2d 879].) Questions of statutory interpretation, however, we review de novo. (*Ibid.*)

## DISCUSSION

### 1. *Holcomb Was Not Required to Obtain Permission from the Presiding Justice or Post Security to File This Appeal*

In their motion to dismiss, defendants contend we should not hear Holcomb's appeal because he failed to obtain leave from the presiding justice and did not post the bond required by the trial court's order. We disagree.

The vexatious litigant statutes, section 391 et seq., provide two remedies against vexatious litigants. The first is an order to furnish security, as described in section 391.3.[1] This remedy is obtained by bringing a motion under section 391.1,[2] which requires a determination that the plaintiff is a vexatious litigant, and that "there is not a reasonable probability that he will prevail [on the merits]." If an order to furnish security is issued, the action is automatically stayed from the time the motion was filed until 10 days after the plaintiff posts the required security. (§ 391.6.)[3] If the security is not posted, the action "shall be dismissed as to the defendant for whose benefit it was ordered furnished." (§ 391.4.)[4]

Another remedy is found in section 391.7, which authorizes the court to "enter a prefiling order which prohibits a vexatious litigant from filing any

---

[1] Section 391.3 provides: "If, after hearing the evidence upon the motion, the court determines that the plaintiff is a vexatious litigant and that there is no reasonable probability that the plaintiff will prevail in the litigation against the moving defendant, the court shall order the plaintiff to furnish, for the benefit of the moving defendant, security in such amount and within such time as the court shall fix."

[2] Section 391.1 provides: "In any litigation pending in any court of this state, at any time until final judgment is entered, a defendant may move the court, upon notice and hearing, for an order requiring the plaintiff to furnish security. The motion must be based upon the ground, and supported by a showing, that the plaintiff is a vexatious litigant and that there is not a reasonable probability that he will prevail in the litigation against the moving defendant."

[3] Section 391.6 provides: "When a motion pursuant to Section 391.1 is filed prior to trial the litigation is stayed, and the moving defendant need not plead, until 10 days after the motion shall have been denied, or if granted, until 10 days after the required security has been furnished and the moving defendant given written notice thereof. When a motion pursuant to Section 391.1 is made at any time thereafter, the litigation shall be stayed for such period after the denial of the motion or the furnishing of the required security as the court shall determine."

[4] Section 391.4 provides: "When security that has been ordered furnished is not furnished as ordered, the litigation shall be dismissed as to the defendant for whose benefit it was ordered furnished."

new litigation in the courts of this state in propria persona without first obtaining leave of the presiding judge of the court where the litigation is proposed to be filed." (§ 391.7, subd. (a).)[5] The presiding judge may allow the filing of the new litigation "only if it appears that the litigation has merit and has not been filed for the purposes of harassment or delay. The presiding judge may condition the filing of the litigation upon the furnishing of security for the benefit of the defendants as provided in Section 391.3." (§ 391.7, subd. (b).) The Judicial Council maintains a record of all vexatious litigants in the state and distributes a list to the clerks of the courts annually. (§ 391.7, subd. (e).)[6] The remedy provided in section 391.7 is in addition to the other remedies provided by the vexatious litigant statutes. (§ 391.7, subd. (a).)

Defendants construe the order issued in the present case as a prefiling order under section 391.7, and cite *McColm v. Westwood Park Assn.* (1998) 62 Cal.App.4th 1211 [73 Cal.Rptr.2d 288], for the proposition that leave of the presiding justice is required before Holcomb may pursue this appeal. *McColm* held that filing an appeal effectively commenced a "new litigation" under section 391.7, subdivision (a), and thus a plaintiff subject to a prefiling order was required to obtain permission from the Court of Appeal's presiding justice before commencing an appeal. (62 Cal.App.4th at pp. 1220–1221.)

The problem for defendants, however, is the trial court's order in the present case was not a section 391.7 prefiling order. By both its operation and express citation to sections 391.1, 391.3, and 391.6, the trial court's order simply requires the posting of security under section 391.3. Indeed, the order does not cite section 391.7 and does not purport to restrict Holcomb's ability to file future lawsuits. Accordingly, Holcomb was free to file the present appeal without restriction.

2. *The Evidence Does Not Support a Finding that Holcomb Was a Vexatious Litigant Under Subdivision (b)(1) of Section 391*

■ Section 391, subdivision (b), lists four alternative definitions for a vexatious litigant.[7] In seeking an order requiring the posting of security under

---

[5] Section 391.7, subdivision (a), provides: "In addition to any other relief provided in this title, the court may, on its own motion or the motion of any party, enter a prefiling order which prohibits a vexatious litigant from filing any new litigation in the courts of this state in propria persona without first obtaining leave of the presiding judge of the court where the litigation is proposed to be filed. Disobedience of the order by a vexatious litigant may be punished as a contempt of court."

[6] Section 391.7, subdivision (e), provides: "The clerk of the court shall provide the Judicial Council a copy of any prefiling orders issued pursuant to subdivision (a). The Judicial Council shall maintain a record of vexatious litigants subject to those prefiling orders and shall annually disseminate a list of those persons to the clerks of the courts of this state."

[7] Section 391, subdivision (b), provides: " 'Vexatious litigant' means a person who does any of the following: [¶] (1) In the immediately preceding seven-year period has commenced,

section 391.3, defendants relied on three of these definitions. The trial court, however, did not specify under which subdivision it made its ruling. Accordingly, we will imply findings under each, and determine whether substantial evidence support them.

Section 391, subdivision (b)(1), describes a vexatious litigant as one who: "In the immediately preceding seven-year period has commenced, prosecuted, or maintained in propria persona at least five litigations other than in a small claims court that have been (i) finally determined adversely to the person or (ii) unjustifiably permitted to remain pending at least two years without having been brought to trial or hearing." Respondents contend the requirements of subdivision (b)(1) are satisfied by the following five lawsuits: (1) *Holcomb v. City of Compton* (Super. Ct. L.A. County, 2002, No. 00C02972); (2) *Holcomb v. National Association of Securities Dealers* (Super. Ct. Orange County, 2002, No. 02CC04684 (*NASD*)); (3) *Holcomb v. First Republic Group* (U.S. Dist. Ct., C.D.Cal., 2001, No. SACV01-597-AHS(ANx) (*First Republic*)); (4) *Holcomb v. Joe MacPherson Ford, Inc.* (Super. Ct. Orange County, 1998, No. 699078 (*MacPherson I*)); (5) *Joe MacPherson Ford, Inc. v. Holcomb* (Mun. Ct., Orange County, 1998, No. 297855 (*MacPherson II*)).

The most apparent problem with this list of cases is *MacPherson II*. This case arose out of *MacPherson I,* a lawsuit Holcomb filed against a car dealership concerning Holcomb's purchase of an automobile. The defendant filed a cross-complaint against Holcomb in *MacPherson I* to recover money the defendant spent in paying off the loan on Holcomb's trade-in vehicle. The defendant's cross-complaint was transferred to the municipal court and

---

prosecuted, or maintained in propria persona at least five litigations other than in a small claims court that have been (i) finally determined adversely to the person or (ii) unjustifiably permitted to remain pending at least two years without having been brought to trial or hearing. [¶] (2) After a litigation has been finally determined against the person, repeatedly relitigates or attempts to relitigate, in propria persona, either (i) the validity of the determination against the same defendant or defendants as to whom the litigation was finally determined or (ii) the cause of action, claim, controversy, or any of the issues of fact or law, determined or concluded by the final determination against the same defendant or defendants as to whom the litigation was finally determined. [¶] (3) In any litigation while acting in propria persona, repeatedly files unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay. [¶] (4) Has previously been declared to be a vexatious litigant by any state or federal court of record in any action or proceeding based upon the same or substantially similar facts, transaction, or occurrence."

became *MacPherson II.* This municipal court case involved only the defendant's cross-complaint and did not constitute litigation "commenced, prosecuted, or maintained" by Holcomb.

Because defendants can cite only four cases falling within the parameters of section 391, subdivision (b)(1), Holcomb does not qualify as a vexatious litigant under that provision.

3. *The Evidence Does Not Support a Finding that Holcomb Was a Vexatious Litigant Under Subdivision (b)(2) of Section 391*

Section 391, subdivision (b)(2), describes a vexatious litigant as one who: "After a litigation has been finally determined against the person, repeatedly relitigates or attempts to relitigate, in propria persona, either (i) the validity of the determination against the same defendant or defendants as to whom the litigation was finally determined or (ii) the cause of action, claim, controversy, or any of the issues of fact or law, determined or concluded by the final determination against the same defendant or defendants as to whom the litigation was finally determined." Contending Holcomb falls within this definition, defendants cite cases where Holcomb filed motions for reconsideration and appealed adverse decisions.

■ To support a vexatious litigant finding, the plaintiff's attempts at relitigation must be "[a]fter a litigation has been finally determined . . . ." (§ 391, subd. (b)(2).) Under the vexatious litigant statutes, " 'Litigation' means any civil action or proceeding . . . ." (§ 391, subd. (a).) Although the term "finally determined" is not defined in section 391, courts have defined it as the time a judgment becomes final for all purposes, i.e., "when all avenues for direct review have been exhausted." (*Childs v. PaineWebber Incorporated* (1994) 29 Cal.App.4th 982, 993 [35 Cal.Rptr.2d 93] (*Childs*).) With this understanding, Holcomb's filing of motions for reconsideration and appeal before a judgment is final for all purposes would not support a vexatious litigant finding under section 391, subdivision (b)(2). A review of the evidence cited by defendants, however, does provide at least one instance in which Holcomb attempted to relitigate a matter after it was "finally determined."

Holcomb instituted an arbitration proceeding against the National Association of Securities Dealers (NASD) and related parties. Although Holcomb was seeking to recover approximately $200,000 from the defendants, he succeeded in obtaining an award of only $145 against one defendant, and had costs assessed against him in the amount of $2,846.50. Dissatisfied with the outcome, Holcomb filed a motion under section 10 of title 9 of the United States Code in federal district court to vacate the judgment. (*First Republic,*

*supra,* No. SACV01-597-AHS(ANx).) On August 16, 2001, the district court denied Holcomb's motion. On September 19, 2001, Holcomb filed a motion for reconsideration that the court also denied. In March 2002, Holcomb filed a complaint in Orange County Superior Court against the NASD, its agents, and the arbitrator in an attempt to recover the damages originally sought in the arbitration. (*NASD, supra,* No. 02CC04684.) The case was dismissed in September 2002.

■ In reviewing the foregoing, we conclude the motion to vacate was not an attempt to relitigate a litigation that was "finally determined." Under federal law, an arbitration award is considered final *unless* either party timely moves to vacate or modify the award under section 10 of title 9 of the United States Code. (*Corey v. New York Stock Exchange* (6th Cir. 1982) 691 F.2d 1205, 1212.) To be timely, a motion to vacate or modify must be served within three months of the award. (9 U.S.C. § 12.) Because the arbitration award was made on March 29, 2001, and the motion to vacate was served less than three months later, on June 22, 2001, the motion was timely. Accordingly, the award was not "final" when the motion to vacate was decided.

■ We next determine whether the motion for reconsideration of the district court's order was filed after the decision was "final."[8] Under rule 4(a)(1)(A) of the Federal Rules of Civil Procedure (28 U.S.C.), a party has a right to file an appeal in a civil case within 30 days of entry of the judgment or order being challenged. This time may be extended if a motion for reconsideration is filed within 10 days of the challenged decision. (*Id.,* rule 4(a)(4)(A)(vi).) In the present case, Holcomb did not file his motion for reconsideration until 35 days after the court denied his motion to vacate. Accordingly, absent special circumstances outlined in rule 4, the time for Holcomb to appeal the district court's decision had passed by the time he filed his motion for reconsideration.

Accordingly, Holcomb's motion for reconsideration in the district court represented a "relitigation" of a matter that had been "finally determined." In addition, Holcomb unmistakably attempted to "relitigate" a finally determined litigation when he filed the *NASD* case in superior court after the federal district court denied his motion to vacate the arbitration award. Thus, the

---

[8] We recognize under the federal rules, "a judgment or order, once rendered, is final for purposes of res judicata until reversed on appeal or modified or set aside in the court of rendition," (*Martin v. Martin* (1970) 2 Cal.3d 752, 761 [87 Cal.Rptr. 526, 470 P.2d 662]), and that California courts consider federal judgments to be final for res judicata purposes if they are final in the federal courts. (*Calhoun v. Franchise Tax Board* (1978) 20 Cal.3d 881, 887 [143 Cal.Rptr. 692, 574 P.2d 763].) Nonetheless, the California finality rule is applied to federal judgments and orders for purposes of section 391. (See *Childs, supra,* 29 Cal.App.4th at p. 994.)

record demonstrates two occasions on which Holcomb relitigated a matter that had been finally determined. The question now is whether these two attempts at relitigation alone are sufficient to satisfy the requirement a party "repeatedly" relitigates a matter that has been finally determined. Based on the record before us, we conclude it does not.

■ "When interpreting statutes, we seek to ascertain the legislative intent with a view to effectuating the purpose of the statute, and construe the words of the statute in the context of the statutory framework as a whole." (*Korea Water Resources Corp. v. Lee* (2004) 115 Cal.App.4th 389, 401 [8 Cal.Rptr.3d 853].) ■ "The vexatious litigant statutes were enacted to require a person found a vexatious litigant to put up security for the reasonable expenses of a defendant who becomes the target of one of these obsessive and persistent litigants whose conduct can cause serious financial results to the unfortunate object of his attack. The purpose of the statutory scheme is to deal with the problem created by the persistent and obsessive litigant who has constantly pending a number of groundless actions, often against the judges and other court officers who decide or were concerned in the decision of previous actions adversely to him." (*First Western Development Corp. v. Superior Court* (1989) 212 Cal.App.3d 860, 867–868 [261 Cal.Rptr. 116].)

This problem was illustrated in *Stafford v. Russell* (1962) 201 Cal.App.2d 719 [20 Cal.Rptr. 112] (*Stafford*), a case decided shortly before the enactment of the vexatious litigant statutes. In *Stafford,* the court reaffirmed a judgment that had been affirmed in 10 previous writs and appeals by the losing party and upheld an order of contempt against him that included jail time. In so doing, the court made two suggestions: "(1) any legislative or state bar committee or law revision commission studying the matter of 'vexatious litigation' and the unreasonable burdens placed upon the courts might well study the litigation involved here, and (2) the trial courts should be alert to an abuse of our judicial system and should take firm action by punishing for contempt as was done in this case." (*Id.* at p. 722.)

■ Despite *Stafford*'s second recommendation, the Legislature opted not to punish vexatious litigants for past behavior, but to ameliorate future harm by requiring them, per section 391.1, to post security for the benefit of their future "victims." The Legislature also curtailed their ability to file new lawsuits by requiring them to obtain leave from the presiding judge under section 391.7. While not sanctioning past behavior, section 391 does use a litigant's past as gauge in determining his or her future litigation activities. For example, subdivision (b)(1) allows a litigant to be declared vexatious in a case—without regard to the litigant's behavior in that case—simply because the litigant commenced, prosecuted or maintained five litigations during the

preceding seven years that were either determined adversely, or were unjustifiably permitted to remain pending for at least two years without being brought to trial.

Unlike section 391, subdivision (b)(1), which employs specific numerical benchmarks, such as "five cases," "seven years," and "two years," the Legislature chose to employ the term "repeatedly" in subdivision (b)(2). Given the specificity in subdivision (b)(1), we may safely presume if the Legislature intended the term "repeatedly" to simply mean "more than one time," the Legislature would have said so. Understanding the statutory scheme as seeking to prevent future harm based on a litigant's past behavior, we view the Legislature's use of the adverb "repeatedly," as referring to a past pattern or practice on the part of the litigant that carries the risk of repetition in the case at hand.

 Of course, the risk of repetition is fairly easy to demonstrate in situations where the defendant seeking security has been the target of previous relitigation attempts or the case involves facts or circumstances similar to those in which the plaintiff sought to relitigate. Indeed, the court in *Camerado Ins. Agency, Inc. v. Superior Court* (1993) 12 Cal.App.4th 838, 842 [16 Cal.Rptr.2d 42] viewed subdivision (b)(2) of section 391 as exclusively referencing conduct that occurred in the "very proceeding" in which the defendant seeks security. We do not, however, share this view. Section 391 does not expressly require the defendant seeking security to be a past victim of the plaintiff's previous relitigation attempts, or that the case in which the vexatious litigant determination is sought relate to litigation in which such attempts were made. In discussing the purpose of subdivision (b)(2) shortly after section 391 was enacted, the court in *Taliaferro v. Hoogs* (1965) 237 Cal.App.2d 73, 74 [46 Cal.Rptr. 643] observed: "The constant suer . . . becomes a serious problem to others than the defendant he dogs. By clogging court calendars, he causes real detriment to those who have legitimate controversies to be determined and to the taxpayers who must provide the courts. Arguably, one who has repeatedly relitigated groundless claims against one defendant could be required to give security before pressing to trial an apparently unfounded claim against a new victim."

Although section 391, subdivision (b)(2) does not require a connection between the previous relitigation attempts and the movant or action in which security is sought, such a connection would militate heavily in favor of requiring the plaintiff to provide security. The present case, however, shares no connection with the arbitration matter Holcomb attempted to relitigate. Moreover, defendants have not demonstrated that Holcomb has threatened to relitigate the current case, or would likely do so if he does not prevail.

 Accordingly, based on the record before us, we conclude Holcomb's previous motion for reconsideration of the district court's order denying his

motion to vacate the arbitration award, and superior court action to collaterally attack the district court's rulings, do not constitute evidence sufficient to sustain a finding Holcomb "repeatedly" relitigated matters as required in subdivision (b)(2) of section 391.

### 4. *The Evidence Does Not Support a Finding Holcomb Was a Vexatious Litigant Under Subdivision (b)(3) of Section 391*

Defendants also contend the evidence supports a finding under subdivision (b)(3) of section 391 (subdivision (b)(3)), which describes a vexatious litigant as one who: "In any litigation while acting in propria persona, repeatedly files unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay." The evidence relied upon by defendants falls short of the mark, however.

In support of their contention, defendants cite to the *MacPherson I* case, noting "the 15-page docket evidences ongoing discovery disputes, the request to appoint a discovery referee, that Holcomb filed a motion for reconsideration and an appeal from the judgment and, ultimately, that the judgment was affirmed on appeal." A close review of the docket sheet and other portions of the record discloses little support for a finding under subdivision (b)(3). For example, the vast majority of entries in the 15-page docket in *MacPherson I* are due to motions brought by the defendant, not Holcomb. Notably, defendant's request to appoint a discovery referee, brought concurrently with the initial discovery motions, fails to demonstrate Holcomb employed tactics that "are frivolous or solely intended to cause unnecessary delay." More important, the first round of discovery motions, and Holcomb's motion for reconsideration of court imposed discovery sanctions occurred during the time Holcomb was represented by counsel, and therefore do not count for purposes of subdivision (b)(3).

It is difficult, if not impossible, to make a determination under subdivision (b)(3) simply by resort to the docket sheet of a previous case. Even when the outcome of a particular motion can be successfully divined from the docket—a task that is not always easy—it is often impossible to discern whether the particular motion was completely meritless, or made for an improper purpose.

Moreover, the docket in *MacPherson I* reflects that the defendant brought a vexatious litigant motion late in the case, a motion the court apparently denied. That the court in *MacPherson I* was intimately familiar with the manner in which Holcomb conducted the litigation, and still denied the motion, provides the most reliable evidence in the docket sheet on this subject.

In sum, we conclude the evidence presented is insufficient to sustain a finding Holcomb is a vexatious litigant.

## DISPOSITION

The orders declaring Holcomb to be a vexatious litigant and requiring the posting of security are reversed.

O'Leary, Acting P. J., and Ikola, J., concurred.