[No. B167032. Second Dist., Div. Five. Apr. 28, 2004.]

DIAL 800 et al., Plaintiffs and Appellants, v.
DAVID FESBINDER et al., Defendants and Respondents.

**COUNSEL**

Fredman, Lieberman and Howard S. Fredman for Plaintiffs and Appellants.

Smiland & Khachigian and Stacy L. Sokol for Defendants and Respondents David Fesbinder and Brenda Fesbinder.

No appearance on behalf of Defendants and Respondents Michael Rosenblum and Perpetual International Trading Limited.

OPINION

TURNER, P. J.—

## I. INTRODUCTION

Plaintiffs, Dial 800, LLC, a California limited liability company and Dial 800, Inc., a California corporation, appeal from an order dismissing their interpleader action filed pursuant to Code of Civil Procedure[1] section 386 against defendants, David Fesbinder, Brenda Fesbinder (the Fesbinders), Michael Rosenblum, and Perpetual International Trading Limited (Perpetual), a Seychelles corporation. Perpetual is wholly owned by Mr. Rosenblum. Defendants are involved in a dispute over ownership interests of shares in plaintiffs. Defendants made conflicting demands to plaintiffs for a distribution of funds in the amount of $65,824. Immediately after plaintiffs filed the interpleader action, they deposited the funds into the superior court. Plaintiffs sought discharge from liability against any claims by defendants for refusing to disburse the money. The Fesbinders have joined plaintiffs' opening brief on appeal requesting that the order dismissing the interpleader action be reversed.

Mr. Rosenblum, who is a United States citizen and resident of Israel, has not filed a respondent's brief on appeal. However, in the trial court, Mr. Rosenblum and Perpetual moved to quash service of the summons and complaint of the interpleader action for lack of personal jurisdiction. In dismissing the action, the trial court refused to adjudicate the absence of personal jurisdiction contentions posited by Mr. Rosenblum and his wholly owned corporation, Perpetual. Rather, the trial court dismissed the interpleader action sua sponte based on a private agreement by defendants to arbitrate their dispute over the ownership of the shares in plaintiffs in Israel. (Plaintiffs are not a party to the defendants' arbitration agreement.) The trial judge found that the existence of an arbitration clause in defendants' agreements deprived the California superior court of jurisdiction to resolve the issues raised in the interpleader action. In so ruling, the trial court relied on the fact the arbitration before three rabbis was being conducted in Israel.

We reach four conclusions which we will discuss later in some detail. First, the sua sponte order dismissing plaintiffs' interpleader action must be reversed because the trial judge erroneously ruled that the private contractual

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

agreement among defendants to arbitrate their dispute before a religious tribunal in Israel deprived the Los Angeles Superior Court of subject matter jurisdiction. Second, the trial court is to allow defendants to litigate the merits of the interpleader complaint after the remittitur issues. Third, if plaintiffs' discharge motion is granted, the trial court may exercise its discretion and decide whether to stay the remainder of the interpleader action which will ultimately resolve the allocation of the disputed funds among defendants pending the outcome of the arbitration in Israel. Fourth, the trial court is to deny the motion to quash on jurisdictional grounds brought by Mr. Rosenblum and Perpetual. They have sought attorney fees as the prevailing parties in the present interpleader lawsuit after the trial court dismissed the action on grounds entirely unrelated to *personal* jurisdiction issues, thereby submitting to the jurisdiction of the Los Angeles Superior Court.

## II. BACKGROUND

On July 22, 2002, the Fesbinders filed a petition for a court order to appoint a third arbitrator in the Israeli arbitration. (*Fesbinder v. Rosenblum*, (Super.Ct. L.A. County, July 22, 2002, No. BS077340).) The petition alleged that the Fesbinders and Mr. Rosenblum and Perpetual entered into a securities and voting rights purchase agreement on July 5, 1998. The Fesbinders and Mr. Rosenblum are all Israeli residents. According to the petition, the Fesbinders were to sell and transfer securities and voting rights in plaintiffs to Mr. Rosenblum and Perpetual for $500,000. The funds were payable to a trustee in three equal installments of $166,666.66 due July 5, 1998, and March 5, and July 5, 1999. The July 5, 1998, purchase agreement provided that notices were to be sent to the attorneys for the parties. All notices and communications were to be sent on behalf of Mr. Rosenblum and Perpetual to Barry L. Burten, an attorney with the law firm of Jeffers, Mangels, Butler & Marmaro in Los Angeles. Notices and other communications to the Fesbinders were to be sent to Stacy Sokol, an attorney in Beverly Hills, California. The July 5, 1998, purchase agreement also contains an arbitration clause which states: "Any controversy or dispute arising out of this Agreement . . . shall be submitted through Rabbi Shuchatowitz upon the mutual consent of the parties or, if no such consent has been reached, to an Orthodox Bais Din selected through the process of *zavla* ('Bais Din') for binding resolution. If permitted by the Bais Din and applicable law, the decision of the Bais Din may be entered as a judgment in any court of competent jurisdiction and enforced according to the laws of such jurisdiction." Further, the parties entered into a trust agreement to handle the transactions which were to occur under the July 5, 1998, purchase contract. The trust agreement provided that any dispute concerning a default was to be resolved as follows, "Any determination hereto made by the Trustee as to the rights of the parties pursuant to this Trust Agreement shall be binding upon the parties and

enforceable as an arbitration award in any court of competent jurisdiction in Israel or in Los Angeles County, California." The trust agreement required notices to go to the same attorneys in Los Angeles and Beverly Hills, California as the July 5, 1998, purchase contract. Paragraph 11 of the trust agreement states, "This Trust shall be construed, administered and enforced in accordance with the laws of the State of California."

A dispute arose between the parties to the July 5, 1998, agreement after the first installment was paid. The parties ultimately entered into an arbitration agreement that required resolution of the disputes between the parties would be resolved by a panel of three orthodox Jewish rabbis. The arbitration agreement provided for the selection of three arbitrators. The first arbitrator was to be chosen by the Fesbinders. The second arbitrator was to be selected by Mr. Rosenblum and Perpetual. The third arbitrator was to be chosen by the other two selected by the parties. The arbitration proceedings began before the panel of three arbitrators on July 14, 1999. However, before a final decision was reached, the arbitrator selected by Mr. Rosenblum and Perpetual resigned. The parties then became embroiled in a dispute over the appointment of a successor arbitrator. This led to the Fesbinders filing on July 22, 2002, the aforementioned petition for appointment of a third arbitrator in the aforementioned case. The Fesbinders' petition, filed in Los Angeles Superior Court, sought appointment of the arbitrator on the grounds: the securities are partnership interests in a California limited partnership and shares in a California corporation which served as the general partner of the limited partnership; voting rights of the partnership and corporation are involved; and paragraph 11 of the trust agreement calls for the trust to be governed by California law. On September 13, 2002, Mr. Rosenblum and Perpetual moved to quash service of summons and petition for appointment of the third arbitrator for lack of personal jurisdiction. The motion to quash was made on the ground the California court lacked personal jurisdiction over Mr. Rosenblum, an Israeli resident, and Perpetual which is a Seychelles corporation. Plaintiff is not a party to the arbitration clauses at issue in the proceeding filed by the Fesbinders seeking the appointment of a third arbitrator.

On October 7, 2002, plaintiffs filed their interpleader complaint. The interpleader complaint alleged that plaintiffs hold and are required to distribute the sum of $65,824 to the "appropriate member of the limited liability company." However, the Fesbinders and Rosenblums had made conflicting demands for the funds with accompanying threats of lawsuits for failure to distribute the funds or for the distribution to the inappropriate party. Plaintiffs alleged they were indifferent with respect to which defendants are entitled to the funds. After filing the complaint, plaintiffs deposited $65,824 with the court clerk.

On October 28, 2002, the Fesbinders filed, in the present interpleader action, a motion to compel arbitration and for a stay. The Fesbinders sought to stay the present interpleader lawsuit until after the arbitration had been completed. On November 4, 2002, the trial court ordered the arbitration petition proceeding and the interpleader action consolidated. On November 5, 2002, plaintiffs filed a motion for discharge and attorney fees. Plaintiffs also filed a limited opposition to the motion to compel arbitration and stay the pending interpleader action. Plaintiffs indicated that they only opposed a stay of its hearing on and resolution of the discharge motion. This was so that plaintiffs, consistent with the interpleader statutes, could be released from liability to defendant. On November 18, 2002, Mr. Rosenblum and Perpetual filed a motion to quash service of the summons and interpleader complaint for defective service and lack of personal jurisdiction.

After the parties filed a number of responsive pleadings, the trial court raised several issues in minute orders dated January 15 and 16, 2003, for which it requested additional briefing. The issues concerned whether: a California court had jurisdiction to appoint a foreign national to a religious court to privately arbitrate according to religious law outside the United States; section 1286 allows the trial court to enforce an award from a foreign country; and confirmation of an award by a religious court according to religious law would violate the fundamental notion of separation of church and state. The parties briefed these issues. In their papers, the Fesbinders withdrew its petition for an order appointing a third arbitrator.

On February 14, 2003, the trial court denied plaintiffs' motion for discharge and attorney fees. The trial court also denied the Fesbinders' motion to compel arbitration and for a stay. The trial court then dismissed the interpleader complaint and the petition to compel appointment of an arbitrator. On February 28, 2003, plaintiffs filed a reconsideration motion. However, plaintiffs subsequently withdrew the reconsideration motion as moot. This was because the trial court entered dismissal orders as to both the consolidated interpleader complaint and the petition for appointment of a third arbitrator actions on March 4, 2003, which was prior to the hearing on the reconsideration motion.

On March 19, 2003, plaintiffs filed a new trial motion. On March 28, 2003, Mr. Rosenblum and Perpetual filed a motion to fix the amount of attorney fees awardable as costs as the prevailing party of a contract in the interpleader action and arbitrator appointment proceeding. On April 2, 2002, plaintiffs requested judicial notice of the fact that the request for attorney fees was a general appearance. The trial court denied the new trial motion on April 22, 2002. Also, the trial court denied the attorney fees motion of Mr. Rosenblum and Perpetual. Plaintiffs filed a notice of appeal of the dismissal order on May 1, 2003.

## III. DISCUSSION

### A. Subject Matter Jurisdiction

#### 1. The interpleader law

■ Plaintiffs contend the order dismissing its interpleader action must be reversed because the trial court erroneously concluded that it lacked subject matter jurisdiction. Subject matter jurisdiction is conferred by constitutional or statutory law. (*In re Marriage of Jensen* (2003) 114 Cal.App.4th 587, 593 [7 Cal.Rptr.3d 701]; *Marlow v. Campbell* (1992) 7 Cal.App.4th 921, 928 [9 Cal.Rptr.2d 516].) The California Supreme Court has defined subject matter jurisdiction thusly: "Subject matter jurisdiction . . . is the power of the court over a cause of action or to act in a particular way." (*Greener v. Workers' Comp. Appeals Bd.* (1993) 6 Cal.4th 1028, 1035 [25 Cal.Rptr.2d 539, 863 P.2d 784]; *TrafficSchoolOnline, Inc. v. Superior Court* (2001) 89 Cal.App.4th 222, 231 [107 Cal.Rptr.2d 412]; *People v. Jackson* (1983) 150 Cal.App.3d Supp. 1, 6–7 [198 Cal.Rptr. 135], overruled on another point in *People v. Posey* (2004) 32 Cal.4th 193, 205, fn. 5 [8 Cal.Rptr.3d 551, 82 P.3d 755].) By contrast, the lack of subject matter jurisdiction means the entire absence of power to hear or determine a case; i.e., an absence of authority over the subject matter. (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288 [109 P.2d 942]; accord *Greener v. Workers' Comp. Appeals Bd., supra,* 6 Cal.4th at p. 1035.) Where the evidence is not in dispute, a determination of subject matter jurisdiction is a legal question subject to de novo review. (*Warburton/Buttner v. Superior Court* (2002) 103 Cal.App.4th 1170, 1180 [127 Cal.Rptr.2d 706]; *Robbins v. Foothill Nissan* (1994) 22 Cal.App.4th 1769, 1774 [28 Cal.Rptr.2d 190].)

■ There is subject matter jurisdiction over plaintiffs' interpleader action. Section 386, subdivision (b) provides, "Any person, firm, corporation, association or other entity against whom double or multiple claims are made, or may be made, by two or more persons which are such that they may give rise to double or multiple liability, may bring an action against the claimants to compel them to interplead and litigate their several claims . . . ." Section 386, subdivision (b) expressly grants any partnership or corporation, such as plaintiffs, who admittedly owe a debt, the right to bring into court all persons who have or might make conflicting claims on the obligation and to compel the defendants to litigate their claims among themselves. (*City of Morgan Hill v. Brown* (1999) 71 Cal.App.4th 1114, 1122 [84 Cal.Rptr.2d 361]; *Williams v. Gilmore* (1942) 51 Cal.App.2d 684, 688 [125 P.2d 539].) ■ An interpleader action is an equitable proceeding. (*Union Mutual Life Ins. Co. v. Broderick* (1925) 196 Cal. 497, 502 [238 P. 1034]; *Williams v. Gilmore, supra,* 51 Cal.App.2d at p. 688.) ■ In an interpleader action, the court initially determines the right of the plaintiff to

interplead the funds; if that right is sustained, an interlocutory decree is entered which requires the defendants to interplead and litigate their claims to the funds. Upon an admission of liability and deposit of monies with the court, the plaintiff then may be discharged from liability and dismissed from the interpleader action. (*Hancock Oil Co. v. Hopkins* (1944) 24 Cal.2d 497, 508 [150 P.2d 463]; *City of Morgan Hill v. Brown, supra,* 71 Cal.App.4th at p. 1122; *Van Orden v. Anderson, et al.* (1932) 122 Cal.App. 132, 140–141 [9 P.2d 572].) The effect of such an order is to preserve the fund, discharge the stakeholder from further liability, and to keep the fund in the court's custody until the rights of the potential claimants of the monies can be adjudicated. (*City of Morgan Hill v. Brown, supra,* 71 Cal.App.4th at pp. 1122, 1127–1128; *Weingetz v. Cheverton* (1951) 102 Cal.App.2d 67, 80 [226 P.2d 742].) Thus, the interpleader proceeding is traditionally viewed as two lawsuits in one. The first dispute is between the stakeholder and the claimants to determine the right to interplead the funds. The second dispute to be resolved is who is to receive the interpleaded funds. (*San Francisco Savings Union v. Long* (1898) 123 Cal. 107, 109 [55 P. 708]; *State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 612 [109 Cal.Rptr.2d 256]; *Lincoln Nat. Life Ins. Co. v. Mitchell* (1974) 41 Cal.App.3d 16, 19 [115 Cal.Rptr. 723].)

 In this case, the interpleader complaint alleged that plaintiffs, a limited partnership, and the corporation had multiple claims made against them concerning funds that might give rise to double liability and they were disinterested stakeholders. Plaintiffs then tendered the funds to the court. The trial court therefore had the power under section 386 to adjudicate the issues raised by the interpleader action including: the alleged existence of conflicting claims regarding the interpleaded funds; plaintiffs' alleged position as a disinterested mere stakeholder; and ultimately the disposition of the interpleaded funds after deducting plaintiffs' attorney fees. (*City of Morgan Hill v. Brown, supra,* 71 Cal.App.4th at p. 1122; *Williams v. Gilmore, supra,* 51 Cal.App.2d at p. 688.)

### 2. The trial court's ruling

Notwithstanding this express delegation of power to act, the trial court nevertheless concluded on two grounds that it lacked subject matter jurisdiction to allow plaintiffs to interplead the funds. The first ground relied upon by the trial court was the theory that defendants' arbitration agreement usurped its authority to determine the ownership and disbursement issues. Second, the trial court concluded it would ultimately lack power to confirm an arbitration award that was rendered by a panel of three rabbis in Israel. We respectfully disagree with both conclusions. The trial court erroneously concluded that it lacked subject matter jurisdiction because defendants had chosen to

privately arbitrate their ownership dispute. Implicit in this conclusion are two assumptions. The first assumption is that submission to arbitration divests a court of jurisdiction. The second assumption is that a prior action in another country grants a foreign authority exclusive jurisdiction to resolve the issues but also divests California courts of such powers. We address each of these assumptions separately.

### 3. The effect of the arbitration agreement

■ Before analyzing the effect of the arbitration clause, it warrants emphasis plaintiffs never agreed to arbitrate any dispute with defendants. Hence, plaintiffs are not bound by the arbitration agreement between defendants. (*EEOC v. Waffle House, Inc.* (2002) 534 U.S. 279, 289, 293 [151 L.Ed.2d 755, 122 S.Ct. 754]; *Arista Films, Inc. v. Gilford Securities, Inc.* (1996) 43 Cal.App.4th 495, 500–503 [51 Cal.Rptr.2d 35]; Fields, Cal. Alternative Dispute Resolution Practice (1999) § 32.63(4)(b) p. 32-81.) The submission of a dispute to private arbitration does not oust the superior court of jurisdiction. (*Brock v. Kaiser Foundation Hospitals* (1992) 10 Cal.App.4th 1790, 1795 [13 Cal.Rptr.2d 678]; *Preston v. Kaiser Foundation Hospitals* (1981) 126 Cal.App.3d 402, 407 [178 Cal.Rptr. 882]; *Spence v. Omnibus Industries* (1975) 44 Cal.App.3d 970, 975 [119 Cal.Rptr. 171]; compare *Holmes v. Richet* (1880) 56 Cal. 307, 314 [holding that an agreement to arbitrate does not oust the court of jurisdiction but the arbitration clause will be enforced if it is determined to be condition precedent to an action to recover]; *Palmer v. Fix* (1930) 104 Cal.App. 562, 571 [286 P. 498] [same]; *Minton v. Mitchell* (1928) 89 Cal.App. 361, 368 [265 P. 271] [same].) In *Brock v. Kaiser Foundation Hospitals, supra,* 10 Cal.App.4th at pages 1795–1796, the Court of Appeal explained in depth the effect of a private contractual agreement on the court's jurisdiction: "[C]ontractual arbitration is in no sense a 'trial of a cause before a judicial tribunal,' nor is it a usurpation or ouster of the judicial power vested in the trial court of this state by our Constitution. (*Snyder v. Superior Court* (1937) 24 Cal.App.2d 263, 267 [74 P.2d 782].) ■ As a result, there is nothing to prevent one of the parties to a contractual arbitration provision from resorting initially to an action at law. (*Spence v. Omnibus Industries*[, *supra,*] 44 Cal.App.3d [at p.] 975; *Ross v. Blanchard* (1967) 251 Cal.App.2d 739, 742–743 [59 Cal.Rptr. 783].) The other party, if determined to pursue arbitration, must then take action to compel arbitration. (*Spence, supra,* 44 Cal.App.3d at p. 975.) 'A right to compel arbitration is not . . . self-executing. If a party wishes to compel arbitration, he must take active and decided steps to secure that right, and is required to go to the court where the [other party]'s action [at law] lies.' (*Gunderson v. Superior Court* (1975) 46 Cal.App.3d 138, 143 [120 Cal.Rptr. 35].) ■ Consequently, the party seeking to enforce the contractual arbitration clause must file the section 1281.2 petition in the action at law (or raise it as an affirmative

defense in the answer) or else the right to contractual arbitration is waived. (*Id.* at p. 144; *Kustom Kraft Homes* [v. *Leivenstein* (1971)] 14 Cal.App.3d [805,] 811, 92 Cal.Rptr. 650; see also § 1281.5.) The party seeking resolution via contractual arbitration must also file a motion in the action at law to stay it (§§ 1281.4, 1292.8); it will not be stayed automatically. (*Ross, supra,* 251 Cal.App.2d at p. 742.) This assertion of a contractual arbitration agreement constitutes a 'plea in abatement' of the action at law. (*Gunderson, supra,* 46 Cal.App.3d at p. 144; *Kustom Kraft Homes, supra,* 14 Cal.App.3d at p. 811.) [¶] ▇ Once a court grants the petition to compel arbitration and stays the action at law, the action at law sits in the twilight zone of abatement with the trial court retaining merely a vestigial jurisdiction over matters submitted to arbitration. This vestigial jurisdiction over the action at law consists solely of making the determination, upon conclusion of the arbitration proceedings, of whether there was an award on the merits (in which case the action at law should be dismissed because of the res judicata effects of the arbitration award [*Division of Labor Standards Enforcement v. Williams* (1981) 121 Cal.App.3d 302, 309 [175 Cal.Rptr. 347]; Rest.2d Judgments, § 84]) or not (at which point the action at law may resume to determine the rights of the parties). (Cf. *Lord v. Garland* (1946) 27 Cal.2d 840, 851 [168 P.2d 5]; *Shuffer v. Board of Trustees* (1977) 67 Cal.App.3d 208, 217 [136 Cal.Rptr. 527] [discussing effect of interlocutory judgment pursuant to § 597 abating second action at law pending resolution of first action of law].) The court also retains a separate, limited jurisdiction over the contractual arbitration which was the subject of the section 1281.2 petition: 'After a petition has been filed under this title [i.e., 'title 9' (§§ 1280–1294.2)], the court in which such petition was filed retains jurisdiction to determine *any subsequent petition* involving the same agreement to arbitrate and the same controversy, and *any such subsequent* petition shall be filed in the same proceeding.' (§ 1292.6 [italics added].)" Each of these considerations is of materially greater collective intellectual force given that plaintiffs are not signatories to the arbitration clause in the July 5, 1998, purchase agreement between defendants.

▇ Under the aforementioned standards, the trial court had subject matter jurisdiction over the interpleader action. In sum, an arbitration provision does not oust the court of jurisdiction to hear the matter but merely means if one party chooses to arbitrate, a petition may be filed to stay the proceedings, order arbitration and then confirm the award. (*Brock v. Kaiser Foundation Hospitals, supra,* 10 Cal.App.4th at pp. 1795–1796; *Spence v. Omnibus Industries, supra,* 44 Cal.App.4th at p. 975.) Moreover, even when a stay has been issued, the court retains limited jurisdiction over the dispute. (See *Titan/Value Equities Group, Inc. v. Superior Court* (1994) 29 Cal.App.4th 482, 487 [35 Cal.Rptr.2d 4] [after stay is issued, court retains "vestigial" jurisdiction to appoint arbitrators if the method selected by the parties fails (§ 1281.6) and a provisional remedy (§ 1281.8, subd. (b)) and

confirm, correct, or vacate award (§ 1285)]; *Brock v. Kaiser Foundation Hospitals, supra,* 10 Cal.App.4th at p. 1796 [court retains power to confirm award and to entertain subsequent petitions by the parties]; *Preston v. Kaiser Foundation Hospitals, supra,* 126 Cal.App.3d at pp. 407–408 [court which has ordered arbitration retaining jurisdiction to entertain a petition for judicial assistance in moving arbitration forward or to dismiss for lack of diligence].) Therefore, because the matter had been submitted to private arbitration by defendants, but not plaintiffs, the trial court did not lose subject matter jurisdiction. (§ 1281.4; *Federal Ins. Co. v. Superior Court* (1998) 60 Cal.App.4th 1370, 1374 [71 Cal.Rptr.2d 164]; *Brock v. Kaiser Foundation Hospitals, supra,* 10 Cal.App.4th at p. 1796.)

### 4. The effect of the use of Israeli arbitrators

The trial court also erroneously concluded that a pending private arbitration in Israel deprived California courts of subject matter jurisdiction and vested the Israeli courts with exclusive authority to determine the matters at issue. Before discussing the merits of the trial court's holding, we briefly summarize the nature of the Israeli arbitration proceedings. As noted previously, *defendants* submitted their dispute to a beth din in Israel. A "beth din," sometimes transliterated from the Hebrew to "bet din" or "bais din," is a rabbinic court, an authoritative forum of Jewish law. (*Blitz v. Beth Isaac Adas Israel Congregation* (1997) 115 Md.App. 460 [694 A.2d 107, 111, fn. 2]; *Ainsworth v. Schoen* (Fla.Dist.Ct.App. 1992) 606 So.2d 1275, 1276, fn. 1; Ware, *Arbitration and Assimilation* (1999) 77 Wash. U. L.Q. 1053, 1058; Zornberg, *Beyond The Constitution: Is The New York Get Legislation Good Law?* (1995) 15 Pace L. Rev. 703, 708, fn. 31.) Din is Hebrew for a formal court proceeding. (Shippee, *"Blessed Are The Peacemakers": Faith-Based Approaches To Dispute Resolution* (2002) 9 J. of Intern. and Comp. Law 237, 252–253.) Literally, commentators indicate, beth din means "house of judgment" or "house of law." (*Sinai Memorial Chapel v. Dudler* (1991) 231 Cal.App.3d 190, 194 [282 Cal.Rptr. 263]; Zornberg, *Beyond The Constitution: Is The New York Get Legislation Good Law?, supra,* 15 Pace L. Rev. at p. 708, fn. 31; Murakami, *Symposium: the Evolution and Impact of Jewish Law* (1995) 1 U.C. Davis J. of Intern. L. & Pol. 107, 110, fn. 16; Nadel, *New York's Get Laws: A Constitutional Analysis* (1993) 27 Colum. J.L. & Soc. Probs. 55, 59, fn. 31; 43 Encyclopaedia Judaica (1971) p. 719.) The actual beth din proceeding is usually conducted before three rabbis. (*Ibid.*; Hardin, *Religious Postmarital Dispute Resolution: Jewish Marriage Contracts And Civil Courts* (1988) 4 Ohio St. J. on Disp. Res. 97, 101.) Some secular commentators refer to a beth din proceeding addressing business disputes as one before an arbitration panel. (*Id.* at p. 100.) Agreements to resolve disputes before a beth din have been enforced in this country's courts. (*Blitz v. Beth Isaac Adas Israel Congregation* (1998) 352 Md. 31 [720 A.2d

912, 913, fn. 1]; *Avitzur v. Avitzur* (1983) 58 N.Y.2d 108 [446 N.E.2d 136, 138–139, 459 N.Y.S.2d 572].) Further, the results of beth din proceedings have been enforced in this country as though they were arbitration awards. (*Erber v. Goldstein* (2003) 195 Misc.2d 792 [759 N.Y.S.2d 626, 627]; *Ghertner v. Solaimani* (2002) 254 Ga.App. 821 [563 S.E.2d 878, 880]; *Kovacs v. Kovacs* (1993) 98 Md.App. 289 [633 A.2d 425, 432]; *Elmora Hebrew Center, Inc. v. Fishman* (1990) 239 N.J. Super. 229 [570 A.2d 1297, 1300–1301]; *Kingsbridge Center of Israel v. Turk* (1983) 98 A.D.2d 664 [469 N.Y.S.2d 732, 733].) In the present case, the uncontroverted evidence indicates the parties expect the three rabbis to return what will amount to an arbitration award. Further, the evidence, none of which is disputed, indicates such an award would be enforceable in Israeli courts. (Accord, Azrieli, *Improving Arbitration Under the U.S.-Israel Free Trade Agreements: A Framework for A Middle-East Free Trade Zone* (1993) 67 St. John's L. Rev. 187, 202–203.)

■ As to the pendency of a dispute in the courts of another nation, the controlling rule of law is as follows: "The pendency of the action in [a foreign country] is not a bar to the institution of another action between the same parties and for the same cause of action in the courts of California, nor was it the duty of the Superior Court to stay the action pending the determination of the earlier suit in [the foreign country], even though the entire controversy might be there disposed of. As a matter of comity, although not a matter of right, the court had power to continue the case if the circumstances warranted such action. [Citation.] [¶] . . . 'The reason why the pendency of an action in the courts of one sovereignty will not abate an action in the courts of another sovereignty is twofold: First, because a foreign judgment depending on foreign law may be unjust, and could not be enforced beyond the jurisdiction of the foreign court without a new suit on it as only prima facie evidence; and second, and chiefly, because the remedy in the country where the last suit is brought may be more adaptable and safe, and means for effectuating a judgment may be found in the latter and not in the former country.' " (*Pesquera Del Pacifico v. Superior Court* (1949) 89 Cal.App.2d 738, 740 [201 P.2d 553]; accord *Dayan v. McDonald's Corporation* (1978) 64 Ill.App.3d 984 [382 N.E.2d 55, 58, 21 Ill.Dec. 761]; Rest.2d Conf. of Laws, §§ 10, 86, pp. 38, 259 [pendency of lawsuit in foreign nation not a bar to entertaining an action in a state].) Thus, California is not required to dismiss an action merely because " 'initiatory steps' " are taken in a foreign country. (*Pesquera Del Pacifico v. Superior Court, supra,* 89 Cal.App.2d. at p. 741.) Rather, a California judge has discretion to stay the trial in this state's court pending the outcome of a foreign action. (*Ibid.*) Unlike those cases which discuss judicial proceedings pending overseas, in this case, no Israeli court has yet to even assume jurisdiction over the present dispute; thereby further attenuating the force of the absence of subject matter

jurisdiction theory underlying the trial court's dismissal order. Stated differently, a California court has subject matter jurisdiction even though there are arbitral proceedings pending in Israel. There is no pertinent authority to support the action taken—dismissal of the present interpleader action because an arbitration, to which plaintiffs are not a party, is pending in Israel.

### 5. The religious nature of the arbitration

Relying upon section 1286, the trial court was also concerned that it would ultimately lack power to confirm an arbitration award that was rendered by a religious arbitral tribunal in Israel. Section 1286 states, "If a petition or response under this chapter is duly served and filed, the court shall confirm the award as made, whether rendered in this state or another state, unless in accordance with this chapter it corrects the award and confirms it as corrected, vacates the award or dismisses the proceeding." In that respect, the trial judge reasoned that language in section 1286 which provides that the court must "confirm the award as made, whether rendered in this state or another state" means that a California court would ultimately lack power to confirm an arbitration award that was rendered in Israel. We disagree that the language in section 1286 divested the court of jurisdiction because of the pending arbitration before the three-person religious panel in Israel.

First, section 1286 does not, by its express terms, limit the court's power in any manner to confirm an arbitration award from a foreign country, even by a religious tribunal. Rather, as plaintiffs argue, the "rendered in this state or another state" language in section 1286 was added by the Legislature in 1978. (Stats. 1978, ch. 260, § 3, p. 545.) The Legislative Counsel's Digest comment explains that the "rendered in this state or another state" language was enacted because: "Existing law does not provide for the enforcement of an out-of-state arbitration award, unless that award has been reduced to a judgment. [¶] This bill would require the enforcement of arbitration awards made out of state as specified." (Legis. Counsel's Dig., Sen. Bill 1628 (1977–1978 Reg. Sess.) 4 Stats. 1978, Summary Dig., pp. 63–64.) Thus, the language was designed to alleviate the requirement that another state's arbitration award be reduced to judgment in order to be enforceable in California. (See Stats. 1961, ch. 461, § 2, p. 1540; §§ 1285, 1285.4, 1287.4, 1710.10, subd. (c), 1710.25.) Section 1286 does not bar a California trial judge from confirming a foreign arbitrator panel's award.

Second, any Israeli arbitration award would be enforceable in the United States under the terms of title 9 United States Code section 207 which compels adherence to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, which is commonly referred to as

the New York Convention.[2] (*Fotochrome, Inc. v. Copal Co., Ltd.* (2d Cir. 1975) 517 F.2d 512, 516; *Parsons & Whittemore Overseas Co., Inc. v. Societe Generale De L'Industrie Du Papier (RAKTA)* (2d Cir. 1974) 508 F.2d 969, 974.) Title 9 United States Code section 207 is part of the enabling legislation adopted to enforce the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958. (*Employers Ins. of Wausau v. Certain Underwriters at Lloyds* (W.D. Wis. 1992) 787 F.Supp. 165, 167; 9 U.S.C. § 201.[3]) The present dispute falls within the provisions of title 9 United States Code section 202.[4] (*Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH* (11th Cir. 1998) 141 F.3d 1434, 1440–1441; *Bergesen v. Joseph Muller Corp.* (2d Cir. 1983) 710 F.2d 928, 933.) There is a strong federal public policy favoring the enforcement of arbitration agreements in the international commerce context. (*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* (1985) 473 U.S. 614, 629–631 [87 L.Ed.2d 444, 105 S.Ct. 3346]; *David L. Threlkeld & Co., Inc. v. Metallgesellschaft Ltd. (London)* (2d Cir. 1991) 923 F.2d 245, 248.) The parties to the July 5, 1998, purchase agreement expressly provided that the arbitrators' award is enforceable in "any" court of competent jurisdiction—which Los Angeles Superior Court is. If no removal petition is filed, the superior court has the duty to enforce the arbitrators' award pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958; specifically title 9 United States Code section 207. (9 U.S.C. § 205[5]; *Pan*

---

[2] Title 9 United States Code section 207 states: "Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."

[3] Title 9 United States Code section 201 states, "The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, shall be enforced in United States courts in accordance with this chapter."

[4] Title 9 United States Code section 202 states: "An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States."

[5] Title 9 United States Code section 205 states: "Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the

*Atlantic Group Inc. v. Republic Ins. Co.* (S.D.N.Y. 1995) 878 F.Supp. 630, 637–645 [untimely removal petition requires remand of case subject to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 to New York state court]; Rest.3d The Foreign Relations Law of the United States, § 487, p. 629.) If a removal petition is timely filed, then a federal district court would enter an order confirming an award.

■ Third, there is no indication that an award, whether rendered by a secular or religious tribunal in Israel, could not have been reduced to a judgment enforceable in California. As a general matter, an arbitration award is the equivalent of a final judgment which renders all factual and legal matters in the award res judicata. (*Thibodeau v. Crum* (1992) 4 Cal.App.4th 749, 758–759 [6 Cal.Rptr.2d 27]; *Lehto v. Underground Constr. Co.* (1977) 69 Cal.App.3d 933, 939 [138 Cal.Rptr. 419]; *Trollope v. Jeffries* (1976) 55 Cal.App.3d 816, 822–823 [128 Cal.Rptr. 115]; *Walter v. National Indem. Co.* (1970) 3 Cal.App.3d 630, 634 [83 Cal.Rptr. 803].) If reduced to a *money* judgment, the arbitrators' award would be potentially enforceable pursuant to the Uniform Foreign Money-Judgments Recognition Act. (§ 1713 et seq.; *Korea Water Resources Corp. v. Lee* (2004) 115 Cal.App.4th 389, 397–398 [8 Cal.Rptr.3d 853]; compare *In re Stephanie M.* (1994) 7 Cal.4th 295, 314 [27 Cal.Rptr.2d 595, 867 P.2d 706] [Mexican guardianship decree may be enforced under the doctrine of comity].)

Finally, the fact three rabbis are the arbitrators and the decision will no doubt be based on principals of Jewish law does not bar its enforceability in California secular courts. As noted previously, American courts routinely enforce money judgments and other orders by beth din panels. (*Ghertner v. Solaimani, supra,* 563 S.E.2d at p. 880; *Kovacs v. Kovacs, supra,* 633 A.2d at p. 432.) At present, it is speculative to assume that the beth din panel will return an award that will be unenforceable for some reason in California secular courts.

## B. Personal Jurisdiction

Mr. Rosenblum and Perpetual moved to dismiss the interpleader complaint on two grounds. First, they argued there is no constitutional basis for jurisdiction over Mr. Rosenblum, a citizen and resident of Israel, and Perpetual International Trading Limited, a Seychelles corporation. Second, they contended service of the summons and complaint of the interpleader action violated article 10 of the Hague Convention because Israel does not permit private service of documents. Although the parties briefed the personal

petition for removal. For the purposes of Chapter 1 of this title any action or proceeding removed under this section shall be deemed to have been brought in the district court to which it is removed."

jurisdiction issue, the trial court declined to decide it. Rather, the trial court dismissed the interpleader action as previously noted on other grounds.

 Section 410.10 provided "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." The due process clause of the Fourteenth Amendment of the United States Constitution limits a state court's power to render a personal judgment against a nonresident defendant. (*World-Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S. 286, 291 [62 L.Ed.2d 490, 100 S.Ct. 559]; *Kulko v. California Superior Court* (1978) 436 U.S. 84, 91 [56 L.Ed.2d 132, 98 S.Ct. 1690].) Under the Fourteenth Amendment due process clause, the defendant must be given adequate notice and be subject to the personal jurisdiction of the court. (*Peralta v. Heights Medical Center, Inc.* (1988) 485 U.S. 80, 85 [99 L.Ed.2d 75, 108 S.Ct. 896]; *World-Wide Volkswagen Corp. v. Woodson, supra,* 444 U.S. at p. 291.) The California Supreme Court has explained, "A state court's assertion of personal jurisdiction over a nonresident defendant who has not been served with process within the state comports with the requirements of the due process clause of the federal Constitution if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate ' "traditional notions of fair play and substantial justice." ' (*International Shoe Co. v. Washington* (1945) 326 U.S. 310, 316 [90 L.Ed. 95, 66 S.Ct. 154].)" (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444 [58 Cal.Rptr.2d 899, 926 P.2d 1085].) Personal jurisdiction over a nonresident may be either general or specific. (*Helicopteros Nacionales de Columbia v. Hall* (1984) 466 U.S. 408, 414–415 [80 L.Ed.2d 404, 104 S.Ct. 1868]; *Vons Companies, Inc. v. Seabest Foods, Inc., supra,* 14 Cal.4th at p. 445.)

In this case, the parties presented conflicting evidence on the issues of general and specific jurisdiction. As noted above, however, the trial court did not resolve the personal jurisdiction issue. Therefore, given our other rulings, typically we would remand the cause to allow the trial court to rule on the personal jurisdiction issues. But as we will explain, by filing their attorney fees request, Mr. Rosenblum and Perpetual have made a general appearance thereby waiving their jurisdictional claims. Any challenges for lack of personal jurisdiction and for defective service were obviated when on March 28, 2003, Mr. Rosenblum and Perpetual requested, in further motions, attorney fees in the sum of $16,257.50 as the prevailing parties under the operating agreement of Dial 800, Inc. and in the amount of $22,717 pursuant to the July 5, 1998, purchase agreement with the Fesbinders. The written motions were made pursuant to Civil Code section 1717. Plaintiffs assert that Mr. Rosenblum and Perpetual made a general appearance by requesting attorney fees as the prevailing parties as provided in Civil Code section 1717. The issue of whether a request for contractual attorney fees is equivalent to a general appearance has not been directly decided by any California court.

 Section 410.50, subdivision (a) provides in part, "A general appearance by a party is equivalent to personal service of summons on such party." (*Hamilton v. Asbestos Corp.* (2000) 22 Cal.4th 1127, 1147 [95 Cal.Rptr.2d 701, 998 P.2d 403]; *Fireman's Fund Ins. Co. v. Sparks Construction, Inc.* (2004) 114 Cal.App.4th 1135, 1145 [8 Cal.Rptr.3d 446];) Thus, the Courts of Appeal have explained: " 'A general appearance operates as a consent to jurisdiction of the person, dispensing with the requirement of service of process, and curing defects in service.' (2 Witkin, Cal. Procedure (4th ed. 1996) Jurisdiction, § 190, p. 756.)" (*Fireman's Fund Ins. Co. v. Sparks Construction, Inc., supra,* 114 Cal.App.4th at p. 1145; see also *Security Loan and Trust Company of Southern California v. Boston and South Riverside Fruit Company* (1899) 126 Cal. 418, 422 [58 P. 941]; *In re Marriage of Torres* (1998) 62 Cal.App.4th 1367, 1381 [73 Cal.Rptr.2d 344]; 2 Witkin, Cal. Procedure (4th ed. 1996) Jurisdiction, § 199, pp. 764–765.) Section 1014 states, "A defendant appears in an action when the defendant answers, demurs, files a notice of motion to strike, files a notice of motion to transfer pursuant to Section 396b, . . . gives the plaintiff written notice of appearance, or when an attorney gives notice of appearance for the defendant." The statutory list contained in section 1014 of what constitutes an appearance is not exclusive. A general appearance occurs when the defendant takes part in the action or in some manner recognizes the authority of the court to proceed. (*Hamilton v. Asbestos Corp., Ltd., supra,* 22 Cal.4th at p. 1147; *Sanchez v. Superior Court* (1988) 203 Cal.App.3d 1391, 1397 [250 Cal.Rptr. 787].) If the defendant confines its participation in the action to objecting to lack of jurisdiction over the person, there is no general appearance. (*People v. Ciancio* (2003) 109 Cal.App.4th 175, 192 [134 Cal.Rptr.2d 531]; *In re Marriage of Torres, supra,* 62 Cal.App.4th at p. 1381.) However, a party who seeks relief on any basis other than a motion to quash for lack of personal jurisdiction will be deemed to have made a general appearance and waived all objections to defects in service, process, or personal jurisdiction. (*Greener v. Workers' Comp. Appeals Bd., supra,* 6 Cal.4th at p. 1037; *California Dental Assn. v. American Dental Assn.* (1979) 23 Cal.3d 346, 352 [152 Cal.Rptr. 546, 590 P.2d 401]; *Tsakos Shipping & Trading, S.A. v. Juniper Garden Town Homes, Ltd.* (1993) 12 Cal.App.4th 74, 89 [15 Cal.Rptr.2d 585]; *Terzich v. Medak* (1978) 78 Cal.App.3d 636, 639 [144 Cal.Rptr. 323].) The Courts of Appeal have described the scope of actions in the litigation process which constitute a general appearance as follows: "A general appearance occurs where a party, either directly or through counsel, participates in an action in some manner which recognizes the authority of the court to proceed. It does not require any formal or technical act. (*Sanchez* v. *Superior Court*[*, supra,*] 203 Cal.App.3d [at p.] 1397 . . . ; *Creed* v. *Schultz* (1983) 148 Cal.App.3d 733, 740 [196 Cal.Rptr. 252]; see also Code Civ. Proc., § 1014.) 'If the defendant *"raises any other question, or asks for any relief* which can only be granted upon the hypothesis that the

court has jurisdiction of his person, his appearance is general . . . ." [Citation.]' (*California Overseas Bank v. French American Banking Corp.* (1984) 154 Cal.App.3d 179, 184 [201 Cal.Rptr. 400].)" (*Mansour v. Superior Court* (1995) 38 Cal.App.4th 1750, 1756–1757 [46 Cal.Rptr.2d 191], italics added.) ▮ Thus, if a defendant seeks any affirmative relief on the merits, the application may be deemed a general appearance. (*In re Marriage of Torres, supra*, 62 Cal.App.4th at p. 1381; *Tsakos Shipping & Trading, S.A. v. Juniper Garden Town Homes, Ltd., supra*, 12 Cal.App.4th at p. 89.)

▮ In that respect, California courts have found that parties have generally appeared under varying circumstances in which the defendants sought affirmative relief. (*Greene v. Committee of Bar Examiners* (1971) 4 Cal.3d 189, 200 [93 Cal.Rptr. 24, 480 P.2d 976] [party appears by filing deposition and asking to be admitted to practice law]; *Lacey v. Bertone* (1949) 33 Cal.2d 649, 651–652 [203 P.2d 755] [motion for dissolution or modification of injunction]; *In re Marriage of Torres, supra*, 62 Cal.App.4th at p. 1381 [wife seeking financial assistance by way of support order generally appeared]; *Mansour v. Superior Court, supra*, 38 Cal.App.4th at pp. 1756–1757 [general appearance found where attorney issued deposition subpoenas in order to depose two doctors on issues unrelated to jurisdiction]; *Alioto Fish Co. Ltd. v. Alioto* (1994) 27 Cal.App.4th 1669, 1688–1689 [34 Cal.Rptr.2d 244] [filing oppositions on the merits to fee and receiver orders as well as a sanctions motion constituted general appearance]; *Tsakos Shipping & Trading, S.A. v. Juniper Garden Town Homes, Ltd., supra*, 12 Cal.App.4th at p. 89 [attorney filed answer and took part in proceedings]; *In re Matthew B.* (1991) 232 Cal.App.3d 1239, 1270–1271 [284 Cal.Rptr. 18] [addressing the merits of paternity issue as well as execution of stipulation for entry of judgment and to modify child or family support constituted a general appearance]; *366-386 Geary St., L.P. v. Superior Court* (1990) 219 Cal.App.3d 1186, 1194 fn. 2 [268 Cal.Rptr. 678] [seeking and obtaining order continuing a hearing is a general appearance]; *Rhyne v. Municipal Court* (1980) 113 Cal.App.3d 807, 815–816 [170 Cal.Rptr. 312] [filing a demurrer and a motion to continue]; *Kriebel v. City Council of the City of San Diego* (1980) 112 Cal.App.3d 693, 699–700 [169 Cal.Rptr. 342] [either filing a written stipulation extending time or an answer constituted a general appearance]; *RCA Corp. v. Superior Court* (1975) 47 Cal.App.3d 1007, 1009 [121 Cal.Rptr. 441] [a written stipulation extending time "within which to appear"]; *Chitwood v. County of Los Angeles* (1971) 14 Cal.App.3d 522, 527–528 [92 Cal.Rptr. 441] [defendant generally appeared when it filed, in its own name, interrogatories which would only be appropriate if it was appearing as a fictitious defendant]; *Knoff v. City & County of San Francisco* (1969) 1 Cal.App.3d 184, 201 [81 Cal.Rptr. 683] [continuance motion]; *O'Keefe v. Miller* (1965) 231 Cal.App.2d 920, 922–926 [42 Cal.Rptr. 343] [filing stipulation, pleadings, and points and authorities in support of motion for an order to continue pretrial conference

and trial constituted general appearance]; *Estate of Elftman* (1958) 160 Cal.App.2d 10, 12 [324 P.2d 977] [attorney appearance at hearing can result in general appearance]; *Wilson v. Barry* (1951) 102 Cal.App.2d 778, 781 [228 P.2d 331] [executing affidavit in support of a motion for summary judgment made on behalf of himself and other defendants for whom the attorney allegedly was unauthorized to act].) A court is thus required to analyze the defendant's papers to determine if any affirmative relief could be granted on the merits, which is a general appearance. This is distinguished from a mere request for a dismissal based on a statutory provision, which is not a general appearance. (*Berard Construction Co., Inc. v. Municipal Court* (1975) 49 Cal.App.3d 710, 713–720 [122 Cal.Rptr. 825] [statutory motion to dismiss on ground of inconvenient forum]; *Brock v. Fouchy* (1946) 76 Cal.App.2d 363, 370 [172 P.2d 945].)

■ The attorney fees motion premised on the theory Mr. Rosenblum and Perpetual were the prevailing parties on a contract was an affirmative request for relief. The attorney fees motion was filed after the trial court dismissed the lawsuit on grounds entirely unrelated to personal jurisdictional issues. In so moving, Mr. Rosenblum and Perpetual recognized the authority of the court to make a determination that they were the prevailing parties on a contract. (*Hamilton v. Asbestos Corp., Ltd., supra,* 22 Cal.4th at p. 1147; *Sanchez v. Superior Court, supra,* 203 Cal.App.3d at p. 1397.) In seeking the attorney fees under the terms of a contract in the interpleader action, Mr. Rosenblum and Perpetual were not merely asserting that the court lacked jurisdiction. Rather, they requested the trial court to determine rights under the July 5, 1998, purchase and trust agreements contract as well as an operating agreement of Dial 800, Inc. which is a request for affirmative relief. Thus, they are deemed to have generally appeared and submitted to the court's jurisdiction. Our views in this regard are consistent with those of other state courts. (*In re Marriage of Adler* (1995) 271 Ill.App.3d 469 [648 N.E.2d 953, 956, 208 Ill.Dec. 31] [moving for disbursement of escrow funds and attorney fees and costs is request for affirmative relief and general appearance]; *Johnson v. Johnson* (1983) 233 Kan. 198 [662 P.2d 1178, 1182] [personal jurisdiction established when attorney fees motion filed after objecting to court's jurisdiction]; *Associate Discount Corp. v. Haviland* (La.Ct.App. 1969) 218 So.2d 59, 61–62 [request for attorney fees is general appearance because it affirmatively invokes court's jurisdiction]; compare *Heineken v. Heineken* (Fla.Dist.Ct.App. 1996) 683 So.2d 194, 197–198 [attorney fees request did not waive defense of personal jurisdiction because it was a defensive action rather that a request for affirmative relief]; *Grange Insurance Association v. State* (1988) 110 Wn.2d 752 [757 P.2d 933, 940] (in bank) [a request for attorney fees does not waive an objection to personal jurisdiction because the request is a defensive action and not a request for affirmative relief].) We do

not address the issue of the effect of a defendant's motion to enforce an attorney fees clause after a case is dismissed solely on personal jurisdiction grounds.

## C. Conclusion

There is no substantial evidence to support a judgment which requires plaintiffs' interpleader complaint be dismissed or judgment entered in favor of defendants. Defendants are to be given an opportunity to address the merits of the interpleader complaint. If plaintiffs are entitled to discharge, such an order is to be entered and they are to be awarded their costs and attorney fees. If a discharge order is entered, it is possible that all of the interpleaded funds have now been expended. At oral argument, plaintiff's counsel so indicated. How to proceed if all of the interpleaded funds have been expended is a matter we leave for now in the trial court's discretion.

If monies remain available after the distribution to plaintiffs, the trial court must exercise its discretion as to whether to stay the resolution of the remainder of the dispute concerning the interpleaded funds between the Fesbinders and Mr. Rosenblum and Perpetual pending the outcome of the Israeli arbitration. This depends in material part upon the relationship between the funds, if any, held by the court in the interpleader action and the issues in the Israeli arbitration. This is a matter of the exercise of judicial discretion which we leave in the good hands of the trial court. (*Cruz v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303, 320 [133 Cal.Rptr.2d 58, 66 P.3d 1157]; *Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 693 [99 Cal.Rptr.2d 809].)

## IV. DISPOSITION

The judgment is reversed. Upon issuance of the remittitur, the trial court is to allow defendants to address the merits of the interpleader complaint. If the trial court grants plaintiffs' discharge motion, it is to calculate their attorney fees and costs and deduct them from the interpleaded funds. All other parties are to bear their own costs incurred on appeal. The trial court is to exercise its discretion as to whether to stay the remainder of the action as discussed in the body of this opinion.

Grignon, J., and Mosk, J., concurred.

On May 5, 2004, the opinion was modified to read as printed above.