Filed 12/8/22  Becker v. Warner CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| TRACI BECKER, | |
| Plaintiff and Respondent, | E077457 |
| v. | (Super.Ct.No. CVCO2101399) |
| EUN YOUNG WARNER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Mark E. Johnson, Judge.  Affirmed.

Eun Young Warner, in pro. per., for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

The trial court granted a civil harassment injunction in favor of Traci Becker and her family and against their neighbor, Eun Young Warner.  Warner appeals, contending:

(1)  Becker filed false proofs of service.

(2)  There is insufficient evidence that Warner committed unlawful harassment.

1

(3)  Becker and her husband committed perjury.

Warner forfeited her contention that the proofs of service were false, by making a general appearance and by failing to provide us with an adequate record.  She further forfeited her contention that there was insufficient evidence, again by failing to provide us with an adequate record.  Finally, there is no evidence that the Beckers committed perjury.

I

STATEMENT OF THE CASE

In May 2021, Becker filed an application for a civil harassment restraining order (Code Civ. Proc., § 527.6) against Warner.  The complete application is not in the record.  We have only the affidavits of Becker, her husband Chris Becker, and their neighbor Mauricio Jaime, which, from their dates, appear to have been part of the application.  Warner filed a response.

In July 2021, the trial court held an evidentiary hearing.  No court reporter was present.  At the end of the hearing, it granted the petition; it enjoined Warner from harassing Becker and her family members and from coming within eight yards of them.

II

ASSERTEDLY FALSE PROOFS OF SERVICE

Warner contends that Becker filed two false proofs of service.  Under this heading, she also contends that Becker wrongfully arrested her.

Becker filed two proofs of personal service on Warner — a proof of service of the petition, filed on May 26, 2021, and a proof of service of a supplemental declaration, filed on July 8, 2021. Only the latter is in the record.

In the margins of her response to the petition, Warner wrote, "I was never served." She attached a declaration in which she testified that she had never been served with any papers in the case. She added, "I . . . was peacefully walking on the public sidewalk and wrongfully arrested by Traci Becker on 5-29-2021 on Saturday morning 8:00 am without having the paper served."

Warner's response constituted a general appearance, which forfeited her objection to service. "'A general appearance operates as a consent to jurisdiction of the person, dispensing with the requirement of service of process, and curing defects in service.' [Citation.]" (*Fireman's Fund Ins. Co. v. Sparks Construction, Inc.* (2004) 114 Cal.App.4th 1135, 1145.) "'An appearance is general if the party contests the merits of the case or raises other than jurisdictional objections. [Citations.]' [Citation.] Filing an answer on the merits constitutes a general appearance. [Citations.]" (*Ibid.*) In her response, Warner objected to an injunction on the merits. Moreover, she requested affirmative relief, including attorney fees and damages for her "[s]ufferings"; for this reason, too, her response constituted a general appearance. (*Dial 800 v. Fesbinder* (2004) 118 Cal.App.4th 32, 53-54.)

Separately and alternatively, Warner has not shown that the trial court erred. The person who signed the proofs of service testified that Warner was served; Warner

testified that she was not.  That presented a credibility question that it was up to the trial court to resolve.  There is no reporter's transcript, so we do not know if there was any additional evidence on this point.  Indeed, for all we know, Warner eventually admitted that she was served.  "'[The appellant] has the burden of providing an adequate record. [Citation.]  Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].'  [Citation.]" (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.)

Finally, Warner's claim that Becker wrongfully arrested her is simply irrelevant. This is not a civil action for damages, and Warner did not cross-petition for a harassment injunction against Becker.  If Becker unlawfully harassed Warner, that would not authorize Warner to unlawfully harass Becker.  Even assuming for the sake of argument that there is some legal principle under which harassment by Becker would be relevant, Warner has not identified it and has not shown that it applies.

III

ASSERTEDLY INSUFFICIENT EVIDENCE OF UNLAWFUL HARASSMENT

Warner contends that:

(1)  The demand letter that she sent was lawful and did not constitute harassment.

(2)  Warner never contacted nor followed Becker (as opposed to her family members) and therefore could not possibly have harassed her.

(3)  Warner's security camera faces down and therefore could not possibly have invaded the Beckers' privacy.

4

(4)  Warner was entitled to record Becker's son because she was documenting his commission of a public nuisance.

These four contentions all boil down to one:  That there was insufficient evidence of harassment.

A trial court can issue an injunction against harassment.  (Code Civ. Proc., § 527.6, subd. (i).)  "Harassment," in this context, is defined as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose.  The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner."  (Code Civ. Proc., § 527.6, subd. (b)(3).)

"In assessing whether substantial evidence supports the requisite elements of willful harassment . . . , we review the evidence before the trial court in accordance with the customary rules of appellate review.  We resolve all factual conflicts and questions of credibility in favor the prevailing party and indulge in all legitimate and reasonable inferences to uphold the finding of the trial court if it is supported by substantial evidence which is reasonable, credible and of solid value.  [Citations.]"  (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762.)

The problem here is that we have practically no evidence to review.  Because there was no court reporter, we have no reporter's transcript.  We know that Becker testified, but we do not have her testimony.  We know that the trial court took judicial notice of the

5

file in another case, but that file has not been provided to us. At Warner's request, we allowed her to augment the record with six exhibits. However, the record does not indicate that these exhibits were ever admitted into evidence. In sum, again (see part II, *ante*), Warner has not provided us with an adequate record.

Warner contends that the demand letter, the security camera, and the recording of Becker's son did not constitute harassment. However, the evidence at the hearing may have shown that they did. To the extent that she relies on exhibits, such as the alleged demand letter, we repeat that we do not know that these exhibits were admitted into evidence. Likewise, she claims she never contacted Becker, but there may have been evidence that she did. Alternatively, there may have been evidence that she harassed Becker without contacting her directly; even on this limited record, there was some evidence that she harassed Becker by calling the police and city code enforcement and by making negative comments on NextDoor.com. Indeed, Warner's exhibits include her own NextDoor.com post saying that she *had* contacted Becker. Finally, even assuming her contentions are correct, there may have been evidence of additional types of harassment.

Warner argues repeatedly that Becker and her family members harassed her. Again (see part II, *ante*), that is irrelevant. And again, we do not have an adequate record.

6

## IV

## ASSERTED PERJURY

Warner contends that Becker and her husband committed perjury.

A.    *Additional Factual and Procedural Background.*

In support of her application, Becker submitted the declaration of a neighbor, Mauricio Jaime.  Jaime testified:  "Eun Warner requested me to 'help [her] out' because her neighbors are 'just faggots.'  And that I am a 'bigger guy.'"  (Original brackets.)

Chris Becker testified similarly that Jaime came to him and "asked if I had a 'problem' with my neighbor Eun Warner.  He then stated that she . . . ask[ed] him if he can help her with her neighbor 'faggots' and told him 'you are a big guy can you help' insinuating to beat me up or threaten violence causing me great bodily harm or potentially death."

Becker herself testified that, when Warner talked to Jaime, she "called Chris a 'faggot' and then proceeded to ask [Jaime] if he can help her take care of Chris insinuating to possibly assault or hurt Chris."

B.    *Discussion.*

Warner now claims that the Beckers committed perjury, because she actually talked to Jaime about a different neighbor, not about Chris Becker.

Because she has not given us a reporter's transcript, she cannot show that she raised this issue below.  "'[i]t is axiomatic that arguments not raised in the trial court are

7

forfeited on appeal.' [Citation.]" (*Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1074.)

Moreover, there is no *evidence* that she was talking about a different neighbor. She had the opportunity to testify to this in her response and/or at the hearing but did not do so. Admittedly, Jaime testified only that Warner asked him to help her out with "neighbors." Chris Becker testified, however, that after that conversation, Jaime came and asked him if he had a "problem" with Warner; inferably, Jaime understood Warner to be referring to the Beckers.

Apparently to plug this evidentiary hole, 12 days *after* the trial court ruled, Warner signed a declaration stating that she actually asked Jaime to "protect" her from a different neighbor. She asked us to augment the record with it. It is not clear that this declaration was ever filed. In any event, it is irrelevant, because it was not before the trial court when it ruled. (See *In re Zeth S.* (2003) 31 Cal.4th 396, 405 ["an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.'"].) We therefore denied augmentation.

Warner also claims that the Beckers committed perjury because, as Jaime testified, she merely asked him to "help [her] out," not specifically to hurt, assault, or beat anyone. As the Beckers made clear, however, this was an inference on their part. And it was a reasonable inference, given Warner's additional statement that Jaime was "a 'bigger guy.'"

V

DISPOSITION

The order appealed from is affirmed.  In light of Becker's failure to appear, we do not award costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ

P. J.

We concur:

McKINSTER

J.

FIELDS

J.

9